ALBERT W. HAWKES, RELATOR, v. RUSSELL C. GATES AND ARTHUR TENCH, RESPONDENTS.

Argued August 24, 1942—Decided August 28, 1942.

For the relator, *Theodore McCurdy Marsh*.

For the respondents, Russell C. Gates and Arthur Tench, *Arthur T. Vanderbilt (G. Dixon Speakman)*.

For George H. Becker, *Jacob Glickenhaus*.

COLIE, J.   Albert W. Hawkes, a Republican candidate for nomination for the office of United States Senator for New Jersey in the primary election to be held on September 15th, 1942, has been allowed a rule to show cause why "the draw-

ing of the names of the several candidats for the nomination in the Republican Primary" and the order "providing for the arrangement of the said names on the primary ballot of the Republican Party (should not) be set aside" and further "that a writ of *mandamus* out of and under the seal of this Court be issued, or an order be made by this Court, directing and requiring that Russell C. Gates as County Clerk of the County of Essex, or Arthur Tench, as Deputy Clerk of said County, conduct a new drawing of the names of the candidates for the Republican Nomination to the office of United States Senator, in which cards for each of the several candidates, including Gill Robb Wilson be placed in the box, and that the candidates be placed on the primary Republican ballot in the order in which their names be drawn, or that the said Russell C. Gates or Arthur Tench be directed and required to first place the names of the several candidates for nomination of United States Senator on the Republican Primary Ballot on separate lines in the order in which the names were drawn on August 13th, 1942, as hereinbefore set forth, and that thereafter the candidates for the subordinate offices including the bracketed groups hereinbefore referred to, be placd upon the ballot in the order of the drawing of their names as required by the Statute" or, in the alternative, that a writ of *certiorari* issue to review the aforementioned proceedings and order.

Relator, Albert W. Hawkes, together with Franklin W. Kielb, George O. Pullen, Joseph A. Bower, George Biehl and Gill Robb Wilson are all candidates for the Republican nomination for United States Senator for the State of New Jersey.

A faction of the Republican party has filed a joint petition on behalf of its candidates for the sixteen county offices to be filled. This group petitioned requesting that it be bracketed together under the designation "Clean Government Republican." Another faction of the Republican party has taken the same course but under the designation "Republican Smash Bossism." Gill Robb Wilson has adopted the slogan of "Republican—United War Effort." Mr. Wilson, whose

petition is filed with the Secretary of State, has requested that his name be placed on the same line of the voting machine with those who filed a joint petition and chose the designation or slogan of "Clean Government Republican." The request was consented to by the campaign manager of that group. *Cf. R. S.* 19:49-2.

On August 13th, 1942, the defendant Arthur Tench, deputy to Russell C. Gates, county clerk of Essex County, also a defendant, proceeded to draw for the positions of the candidates on the Republican primary ballot. The procedure which he adopted was to place in a box a card bearing the name of Dominic A. Cavicchia and a card bearing the name of John J. Berry, Jr., as respectively representing the two bracketed groups of "Clean Government Republican" and "Republican Smash Bossism." The deputy then drew forth a card which bore Mr. Cavicchia's name; the next card drawn bore Mr. Berry's name. The announcement was then made by the deputy that the group bracketed under the slogan "Republican Smash Bossism" would be placed on the first line of the ballot; the group bracketed under the slogan "Clean Government Republican" on the second line. The deputy then placed the name of each candidate for United States Senator on a card, excepting that no card bearing Mr. Wilson's name was included, placed the five cards in the box and drew them forth in the following order: 1, George Biehl; 2, Albert W. Hawkes; 3, Franklin W. Kielb; 4, George O. Pullen; 5, Joseph A. Bowers. The affidavit of J. Branton Wallace states: "That Arthur Tench then declared that the candidates for nomination in the Republican primary would be arranged on the ballot as follows:

"First Line: Republican Smash Bossism.

Second Line: Clean Government Republican—including Gill Robb Wilson.

Third Line: George Biehl, Albert W. Hawkes and Franklin W. Kielb.

Fourth Line: George O. Pullen and Joseph A. Bowers."

The statutes that apply to this situation are set forth below (as amended *Pamph. L.* 1942, *ch.* 50):

"19:23-24. Drawing for positions on primary ballots; procedure; certification. The position which the candidates, and bracketed groups of names of candidates for the primary for the general election shall have upon the primary election ballots, in the case of candidates for nomination for members of the United States senate; governor; members of the house of representatives; members of the state senate; members of the general assembly; choice for president; delegates and alternates at large to the national conventions of political parties; district delegates and alternates to conventions of political parties; candidates for party position; and county offices or party positions which are to be voted for by the voters of the entire county or a portion thereof greater than a single municipality including a congressional district which is wholly within a single municipality, shall be determined by the county clerks in their respective counties; and, excepting in counties where section 19:49-2 of the Revised Statutes applies, the position on the primary ballots in the case of candidates for nomination for office or party position wherein the candidates for office or party position to be filled are to be voted for by the voters of a municipality only, or a subdivision thereof (excepting in the case of members of the house of representatives) shall be determined by the municipal clerk in such municipalities, in the following manner: The county clerk, or his deputy, or the municipal clerk or his deputy, as the case may be, shall at his office on the thirty-third day prior to the primary election at three o'clock in the afternoon, draw from the box, as hereinafter described, each card separately without knowledge on his part as to which card he is drawing. Any legal voter of the county or municipality, as the case may be, shall have the privilege of witnessing such drawing. The person making the drawing shall make public announcement at the drawing of each name, the order in which same is drawn, and the office for which the drawing is made. When there is to be but one person nominated for the office, the names of the several candidates who have filed petitions for such office shall be written upon cards (one name on a card) of the same size,

substance and thickness. The cards shall be deposited in a box with an aperture in the cover of sufficient size to admit a man's hand. The box shall be well shaken and turned over to thoroughly mix the cards, and the cards shall then be withdrawn one at a time. The first name drawn shall have first place, the second name drawn, second place, and so on; the order of the withdrawal of the cards from the box determining the order of arrangement in which the names shall appear upon the primary election ballot. Where there is more than one person to be nominated to an office where petitions have designated that certain candidates shall be bracketed, the position of such bracketed names on the ballot (each bracket to be treated as a single name), together with individuals who have filed petitions for nominations for such office, shall be determined as above described. Where there is more than one person to be nominated for an office and there are more candidates who have filed petitions than there are persons to be nominated, the order of the printing of such names upon the primary election ballots shall be determined as above described.

"The county clerk in certifying to the municipal clerk the offices to be filled and the names of candidates to be printed upon the primary election ballots, shall certify them in the order as drawn in accordance with the above described procedure, and the municipal clerk shall print the names upon the ballots as so certified and in addition shall print the names of such candidates as have filed petitions with him in the order as determined as a result of the drawing as above described."

(As amended *Pamph. L.* 1941, *ch.* 163):

"19:42-2. Printing official ballots. * * *

"For the primary election for the general election in all counties having a population of four hundred thousand or more where voting machines are or shall be used, all candidates who shall file a joint petition with the county clerk of their respective county and who shall choose the same designation or slogan shall be drawn for position on the ballot as a unit and shall have their names placed on the

same line of the voting machine; and provided, further, that all candidates for municipal or party office in municipalities in counties having a population of four hundred thousand or more where voting machines are or shall be used who shall file a petition with the clerk of their municipality, bearing the same designation or slogan as that of the candidates filing a joint petition with the county clerk as aforesaid may request that his or her name be placed on the same line of the voting machine with the candidates who have filed a joint petition with the county clerk as aforesaid by so notifying the county clerk of said county in writing within two days after the last day for filing nominating petitions and thereupon the county clerk shall forthwith notify the campaign manager of such candidates filing a joint petition as aforesaid of said request, and if the said campaign manager shall file his consent in writing with the said county clerk within two days after the receipt of said notification from said county clerk, the clerk of said county shall place the name of such candidate on the same line of the voting machine on which appears the names of the candidates who have filed the joint petition as aforesaid; provided, also, that any candidate filing a petition with the secretary of state may request that his or her name be placed on the same line of the voting machine with the candidates who have filed a joint petition with the county clerk as aforesaid by so notifying the county clerk of said county in writing within two days after the last day for filing nominating petitions and thereupon the county clerk shall forthwith notify the campaign manager of such candidates filing a joint petition as aforesaid of said request, and if the said campaign manager shall file his consent in writing with the said county clerk within two days after the receipt of said notification from said county clerk, the clerk of said county shall place the name of such candidate on the same line of the voting machine on which appears the names of the candidates who have filed the joint petition as aforesaid.

"19:49-2.1. All acts or parts of acts inconsistent herewith are hereby repealed in so far as they relate to counties of the first class where voting machines are or shall be used."

An examination of the pertinent portions of the statutes quoted reveals no express legislative direction as to the drawing for positions upon the ballot where there are present in the field both independent unaffiliated candidates and candidates affiliated under a slogan. That is to say as between candidates occupying the status of Mr. Hawkes and Mr. Wilson. Lacking an expressed legislative direction on the point, it is necessary to study related statutes in an endeavor to arrive at the legislative intent. It would avail little to recapitulate the exhaustive and able arguments and memoranda presented by counsel in this matter, seeking to sustain or overthrow the manner of procedure followed by the county clerk. Suffice it to say that the end result of the presentation leads the court to the opinion that the legislature has not given any specific direction or directions to the county clerk touching upon this question. In the absence of a clearly charted legislative course, the decision must then rest with the discretion of the county clerk. Whether it is wise to leave the Election Law in such a state that the drawing for positions of candidates upon the primary ballot resides in the discretion of the respective county clerks and, therefore, may differ materially in the various counties, depending upon what the particular clerk may decide, and indeed may differ in the same county as old incumbents go out of office and new county clerks come in with the possible, even probable, result of recurrent yearly controversies such as here, is not a question upon which this court can or should pass. The remedy, if one is needed, lies in the law-making body.

Deeming that the actions of the county clerk of Essex County, by his deputy, were discretionary, this court will not undertake to direct how that discretion shall be exercised.

The decision of the court on this point makes unnecessary a discussion on other points raised.

The relief prayed for is denied.