46 N.J. Super. 550 (1957)
135 A.2d 24
WINFRED O. PERRY, FRANK DeGEORGE AND ROBERT STEIGER, PLAINTIFFS-APPELLANTS,
v.
ANTHONY GIULIANO, ESSEX COUNTY CLERK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 30, 1957.
Decided October 9, 1957.
*551 Before Judges CLAPP, JAYNE and HUGHES.
Mr. Benjamin T. Rauber, of the New York Bar, argued the cause for appellants, pro hac vice.
Mr. Marshall Crowley, Essex County Counsel, argued the cause for respondent.
*552 The opinion of the court was delivered by HUGHES, J.S.C.
The judgment coming before us on this hurried appeal was entered in the Law Division very recently, and involved a question necessary of resolution here before the printing of sample ballots for distribution to the electorate in advance of the forthcoming general election. N.J.S.A. 19:14-21 et seq. Accordingly, not only the rights of the parties, but the beneficent purpose of that statutory aid to a timely and intelligent weighing of political choice, called for appellate consideration of the issue on an emergency basis, and hence the decision of the court has already been stated to the litigants.
The appeal, by certain candidates nominated for public office by direct petition (R.S. 19:13-3 et seq.), challenges the withholding of the mandatory process of the court to require of the county clerk a desired arrangement of the names of these candidates on the sample ballot, as well as on the voting machines to be used in Essex County in the general election. N.J.S.A. 19:48-1 et seq. Appellants describe themselves as "candidates of the Conservative Party" and include a candidate for Governor and two of ten candidates for the General Assembly duly nominated, as stated, by direct petition. The source of their preemptive designation as candidates of the "Conservative Party" was the right accorded such directly nominated candidates in their petitions to "* * * state in not more than three words the designation of the party or principles which the candidates therein named represent * * *" (R.S. 19:13-4), but they are not candidates of a "political party" within the intendment of our law. N.J.S.A. 19:1-1. The latter political entities, the general election candidates of which emerge through the primary election process, are defined as parties which have attained at the next preceding general election the polling, for members of the General Assembly, of at least 10% of the total vote cast in the State, and such presently include in this State only the Republican and Democratic parties.
*553 The grievance asserted and sought to be remedied by appellants is this:  that in the arrangement of names of candidates upon the sample ballot and, prospectively, upon the voting machines, the county clerk has not complied with their expressed wish to be placed in the same column or line, but on the contrary the procedure followed by such official placed the Conservative Party candidate for Governor on the fifth, or "E," line, whereas the Conservative Party candidates for General Assembly appear on the third, or "C," line. Quite understandably, the appellants foresee a resulting distraction on the part of the voter of Conservative Party leaning, in perceptive orientation as to the candidates of his choice. Of not less psychological significance is the coincidental juxtaposition of the Conservative Party General Assembly candidates on the same line "C" with the candidate for Governor of the Socialist-Labor Party, the underlying principles and objectives of these parties being antithetical, mildly stated. We note, incidentally, that under the form of ballot used in voting machines in Essex County, the term "column" as referred to in N.J.S.A. 19:14-12 (a statute originally drawn during the era of paper ballots in all counties) is to be read as "horizontal row," i.e., line, within the intendment of the term "columns or horizontal rows," as described in N.J.S.A. 19:49-2.
The divergent emplacement complained of, asserts the defendant-respondent county clerk, represents a full compliance with the law. Turning thereto, we observe that he duly assigned, after drawing by lot (as between the two major parties to which this privilege by the statute is reserved), the preferred first line to the Democratic Party and the second to the Republican Party, in obedience to N.J.S.A. 19:14-12, supra, this preempting to such parties, of course, lines "A" and "B" of the ballot and machine.
The clerk then was confronted with five candidates directly nominated for the office of Governor, and going forward in pursuance of the same section of the statute, he drew lots among them for ballot position in successive lines under those allocated to the major parties. N.J.S.A. 19:14-12, *554 supra, eighth paragraph. The appellant, Winfred O. Perry, Conservative Party candidate for Governor, was drawn third in order among this class of candidates and, therefore, his name was placed on line "E." As it happened, there were no candidates for General Assembly nominated by direct petition other than those jointly and directly nominated under the designation "Conservative Party" and these "bracketed" candidates, treated as a unit (or as "a single name," in the words of the statute), thus gravitated to the first available unoccupied line for candidates for the office of General Assembly. Had there been other single candidates, or "bracketed" units thereof, nominated for such office, their ballot positions would have been subject to the "drawing by lot" procedure above mentioned. In such case, and in accordance therewith, the Conservative Party candidates might have been assigned any line, and it would have been fortuitous, i.e., subject to the chance of their being so drawn by lot, that they would have found themselves on the same line as the Conservative Party candidate for Governor. Subject to the "drawing by lot" technique described, and to internal arrangement of "bracketed" candidates in the same order as specified in the petition of their nomination, the statute provides:
"The position which the names of candidates, and bracketed groups of names of candidates nominated by petitions for all offices, shall have upon the general election ballot, shall be determined by the county clerks in their respective counties." N.J.S.A. 19:14-12, supra.
It is obvious that the transference of the name of gubernatorial candidate Perry to line "C," so that he would be en rapport with those sharing his political ideology, would be inadmissible, as any such venture would collide with the clear legal right, under this statutory formula, of the present occupant of line "C," specifically, the gubernatorial candidate of the Socalist-Labor Party, supra. Thus delimited, our inquiry seeks the legal principle, if any, which would subject the clerk to the mandatory order of the court to remove the names of the General Assembly candidates of the Conservative *555 Party to share line "E" with the gubernatorial candidate of that party. Mechanically, room exists on that line for their inclusion, and the clerk might well, in his discretion, have placed them there. But that is not the subject of our inquiry in this action, which we view as the modern counterpart of the former peremptory writ of mandamus. We may not be concerned with what this official might do, but rather with what the law required him to do, and that with such undisputable clarity as to invoke the peremptory coercion of the mandatory in-lieu process of the court. But aside from this, and conceding arguendo that there should here have been exercised in the Law Division a reviewing authority under the jurisdiction of the court in lieu of certiorari, the equally troublesome question is projected as to whether, if there inhered a discretion in the county clerk, he abused it in his exercise thereof.
In this aspect we observe the care with which the Legislature has preserved to candidates of the same persuasion, i.e., of "the same designation or slogan," filing in the primary election, the right to be located on the "same line of the voting machine," albeit the petitions of nomination thereof are filed separately with the municipal clerk for municipal or party office, or with the county clerk for county office, or with the Secretary of State for office to be voted upon by the state electorate. N.J.S.A. 19:49-2, supra. A similar statutory provision in the situation here presented, where the gubernatorial candidate (as a candidate for an "office to be filled by the voters of the entire state") necessarily filed separately with the Secretary of State, and the General Assembly candidates (as candidates "to be voted for by all the voters of a single county") necessarily filed with the county clerk, as required by law (R.S. 19:13-3, supra), would have prevented the present issue from arising, inasmuch as such a provision would have been a clear chart of duty for the county clerk.
In the absence of such statutory direction, it might be assumed that the Legislature did not intend to provide *556 the means by which the candidates of, or espousing, certain parties or principles (as distinguished from the candidates of the major "political parties") would achieve the symbolic homogeneity of emplacement on a common line of the ballot and machine. For the court to intervene by its power in lieu of mandamus, the converse must appear, namely, that the statutory duty of the clerk, clear and unmistakable, would dictate the course sought by the appellants. It is from this plateau of certitude, only, that such prerogative or statutory authority of the court may be exerted, for where, as here, the Legislature has ordained no clearly stated course of duty, the court may not interfere with the exercise of the discretion reserved to the county clerk. Hawkes v. Gates, 129 N.J.L. 5 (Sup. Ct. 1942); In re Hoffman, 134 N.J.L. 155 (Sup. Ct. 1946). If a public officer is vested by law with discretionary power, the writ of mandamus did not lie to dictate to him how this discretion should be exercised. Troy v. Barnitt, 11 N.J. Misc. 275 (Sup. Ct. 1933). The mandamus remedy is available only where there is a clear and definite right to the performance of a ministerial duty in essence mandatory and final and wholly free of the element of discretion, or to direct without controlling the exercise of the discretionary authority (Librizzi v. Plunkett, 126 N.J.L. 17 (Sup. Ct. 1940); Caronia v. Caldwell, 126 N.J.L. 134 (Sup. Ct. 1941); Gallena v. Scott, 11 N.J. 231 (1953)), and that limitation, inter alia, upon the function of the ancient writ, has survived the conceptual changes wrought by time and the 1947 Constitution. Switz v. Middletown Tp., 40 N.J. Super. 217 (App. Div. 1956); Id., 23 N.J. 580 (1957).
In like manner, we perceive in the case before us no factual pattern which would justify a determination that such discretion in the clerk had been abused by him. We are not unmindful of the weight of appellants' contention that the statute withholds from candidates directly nominated by petition for the general election advantages relevant to ballot and machine position which are available to candidates of the "political parties" and which are also reserved *557 to candidates wishing to join forces in the primary election. This eventuality, however, since apparently consistent with the legislative design, does not empower the court to legislate, in effect, to provide otherwise, for to do so under the guise of judicial interpretation of the statute would be an inadmissible encroachment upon the legislative process, and is hence beyond the power of the court.
The judgment of the Law Division is affirmed.