IN THE MATTER OF THE APPLICATION OF A. DONALD BIGLEY, CAMDEN COUNTY PROSECUTOR, FOR THE APPOINTMENT OF ADDITIONAL ASSISTANT PROSECUTORS AND THE INCURRING OF OTHER EXPENSES. BOARD OF CHOSEN FREEHOLDERS OF CAMDEN COUNTY, APPELLANT.

Argued October 20, 1969—Decided December 1, 1969.

*Mr. Raymond W. Uliase,* First Assistant County Counsel, argued the cause for appellant (*Mr. John R. Bennie,* County Counsel, attorney).

*Mr. A. Donald Bigley,* Camden County Prosecutor, argued the cause for respondent (*Mr. Robert L. Messick,* Assistant Prosecutor, on the brief).

The opinion of the Court was delivered by

WEINTRAUB, C. J. Upon notice to the Board of Chosen Freeholders (the Board), the Prosecutor applied to the Assignment Judge for approval of expenditures beyond those provided for in appropriations made by the Board. The Assignment Judge entered an order granting the Prosecutor's request. We certified the Board's appeal before it was heard in the Appellate Division.

The order approved (1) the employment of five additional assistant prosecutors, six additional county investigators, and five additional clerk stenographers; (2) the purchase of electronic equipment; (3) electronics training for two detectives; and (4) the purchase of an automobile.

The Board contends that it has the final word with respect to the needs of the Prosecutor. We think the Legislature placed the decision in the Assignment Judge, subject, of course, to appellate review.

The relevant history begins with *Lewis v. Board of Chosen Freeholders of Hudson County,* 37 *N. J. L.* 254 (*Sup. Ct.* 1874). The court there held the county was only morally obliged to pay expenses incurred by the prosecutor in discharging his duty. In immediate response the same year, the Legislature adopted a statute (it became section 100 of the Criminal Procedure Act in the Revision of 1877 and is herein referred to as the statute of 1874) which read:

"It shall be the duty of the prosecutor of the pleas for each county to use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws; and all necessary expenses incurred thereby, verified to and approved under his hand, by the presiding judge of the oyer and terminer or general quarter sessions of the peace for any county, shall be paid by the board of freeholders thereof."

The effect of this statute was considered in *Lindabury v. Board of Chosen Freeholders of Ocean County,* 47 *N. J. L.* 417 (*Sup. Ct.* 1885). There the prosecutor engaged associate counsel for an important trial. The freeholders paid less than the compensation fixed by the judge's certificate. In

holding the judge's certificate was conclusive, the court described the reach of the 1874 statute and the duty of the board of freeholders in these words (*pp.* 423-424):

"The language of the section quoted is quite general. It is made the duty of the prosecutor 'to use all reasonable and lawful diligence for the detection, indictment, and conviction of offenders,' and the payment of 'all necessary expenses incurred thereby' is enjoined upon the board of freeholders. A construction of the statute which would restrict its provisions to the personal efforts of the prosecutor and his personal expenses, without authority to employ other means and instrumentalities to aid him in the discharge of his duty, and to incur expense thereby, would be too narrow to effect the legislative purpose. On such a construction the prosecutor would not be able to have a diagram prepared, or to have a chemical analysis made, or to employ a detective, with any assurance that the expense necessarily incurred thereby would be paid. Such a construction would leave to a prosecutor an excuse for the lax performance of duty,—that he had no authority to incur the requisite expense. The plain intent of the statute was to confer upon the prosecutor authority to provide reasonable means to aid him in the performance of his official duties, with a guaranty that the necessary expenses incurred should be paid; and it was left to the court, by the certificate and approval of the presiding judge, to determine the reasonableness of the means employed, and the necessity of the expenses incurred."

And in *Irving v. Applegate,* 49 *N. J. L.* 376 (*Sup. Ct.* 1887), the court repeated that the certificate of the presiding judge was "conclusive," adding that the certificate "has the force of a judgment against the county, which the board of chosen freeholders are legally bound to pay" (*p.* 379).

In short, the Legislature, confronted with the question whether the freeholders should have the last word with respect to how much money should be provided for the discharge of the prosecutor's duties, decided the ultimate determination should rest with a judicial officer. Perhaps the Legislature feared the independence or effectiveness of the prosecutor could be compromised if local government controlled the resources of his office. Or perhaps the Legislature believed the judicial officer would be more expert in evaluating the manpower and other demands of the criminal business of the county. Whatever the precise grounds, the legislative determination was clear.

It should be stressed that the statute does not call upon the judicial officer to sit in review of the action or inaction of the board of freeholders. On the contrary, the judicial officer is required to make his own original evaluation of the prosecutor's request. Thus the judge does not exercise the judicial power of his office; the statute constitutes him a legislative agent. Hence, although we agree with *Irving v. Applegate* that the judge's order has the quality of a final judgment binding upon the board of freeholders, we emphasize that the judge exercises a delegated legislative function and that in doing so he must decide what ought to be rather than whether the action or inaction of the board of freeholders was arbitrary or unreasonable.

But the Board contends that subsequent statutes reversed that legislative decision and placed the final word with the freeholders. The Board refers to an amendment of the statute of 1874 and also to certain statutes dealing specifically with the personnel of the prosecutor's office.

The amendment of the statute of 1874 upon which the Board relies was adopted in 1933. The bill, as introduced, read:

"It shall be the duty of the prosecutor of the pleas for each county to use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws; and all necessary expenses incurred thereby, certified to and approved under his hand, by a judge of the Court of Oyer and Terminer, or judge of the Court of Quarter Sessions for any county, shall be paid by the board of chosen freeholders thereof, *whenever the same shall be approved by such board of chosen freeholders; provided, however, that the amount or amounts to be expended shall not exceed the amount so fixed by the board of chosen freeholders in its regular or emergency appropriation.*"

We have italicized the proposed amendatory language. Plainly, had the bill passed in that form, the final authority would have been shifted to the freeholders. The judicial officer would have remained, but with a different and obscure role. But the bill was not adopted as proposed. Rather, it was amended by adding as the final phrase, "unless such

expenditure is specifically authorized by order of the Justice of the Supreme Court presiding in such county." That phrase of course continued the thesis of the 1874 statute, that the final decision shall be a judicial officer's.

Thus the 1933 bill, although initially intended to remove the final authority from a judicial officer, was redesigned to shift that authority from one judicial officer to another, higher in the judicial hierarchy. The amendment did not eliminate the judge of the Court of Oyer and Terminer or Court of Quarter Sessions, but his role was necessarily affected by the shift of the final authority. One reading of the statute could make that judge an auditor as to expenditures authorized by appropriations, but there is no reason to suppose the Legislature had that in mind, for the statute as amended is fairly read to continue to deal only with expenditures beyond appropriations. Upon that premise, the statute must be deemed to present two avenues for the prosecutor to obtain additional funds: (1) by an order of a judge of the mentioned County Courts if the freeholders approve, and (2) by an order of the justice of the then Supreme Court, which is conclusive upon the freeholders. The statute does not condition the second procedure upon the prior pursuit of the first, and hence these are alternative ways, with the prosecutor free to pursue the second alternative either initially or if he is unsuccessful in his pursuit of the first alternative.

The revision of 1937 made no change, other than to allocate part of the 1874 statute to *R. S.* 2 :182–5 (now *N. J. S. A.* 2A :158–5) and the balance, with which we are here concerned, to *R. S.* 2 :182–7 (now *N. J. S. A.* 2A :158–7). The courts mentioned in the statute having been abolished by constitutional amendment, the revision of 1951 substituted a judge of the Superior Court or of the County Court for a judge of the former Court of Oyer and Terminer and former Court of Quarter Sessions, and substituted the Assignment Judge of the Superior Court for the justice of the former Supreme Court.

The Board refers to *Adamo v. Bergen County,* 13 *N. J. Misc.* 528 (*Cir. Ct.* 1935). That case does not run against the view we have expressed. There the judge of the Court of Quarter Sessions approved of the prosecutor's hiring of special investigators, but the board of freeholders refused to pay. The trial court held that the amendment of 1933 divested the action of the judge of Quarter Sessions of its former conclusiveness. But the court was careful to point out that "We are not concerned with the proviso" (*p.* 530). And of course it is the proviso which continued the final power in a judicial officer, a justice of the then Supreme Court. The decision in *Adamo* thus dealt only with the order of the judge of the Court of Quarter Sessions. We need hardly add that when we mentioned *Adamo* in *Cetrulo v. Byrne,* 31 *N. J.* 320, 325 (1960), in a survey of a companion subject, we did not thereby enlarge the import of that case.

Hence we conclude that under *N. J. S. A.* 2A:158–7 a judicial officer, now the Assignment Judge for the county, continues to have the final and conclusive authority to approve expenditures beyond the appropriations. The remaining question is whether the statutes dealing with assistant prosecutors, county detectives and county investigators were intended to negate this overriding authority as to such personnel.

With respect to county detectives and investigators, the 1951 revision, *N. J. S. A.* 2A:157–1, *et seq.,* which fixes the number of such positions, expressly provides in section 19 (*N. J. S. A.* 2A:157–19), that the statute shall not be construed "to limit the power of any prosecutor, duly conferred upon him by law, to incur expenses in the detection, arrest, indictment and conviction of offenders against the criminal laws of this state." Thus the Legislature expressly disavowed an intent to restrain the basic statute of 1874 under which the prosecutor may go beyond the budget appropriations with the approval of the Assignment Judge. *State v. Winne,* 12 *N. J.* 152, 166–167 (1953).

Nor is an inconsistent purpose revealed by a subsequent amendment of *N. J. S. A.* 2A:157–22 of the 1951 revision. That section originally provided that if the number of detectives and investigators authorized by the revision should exceed the number employed in a prosecutor's office, the additional authorized appointments could not be made "without prior approval as to the number and salary thereof by the board of chosen freeholders." In 1953 a bill was introduced to add "or by order of the Superior Court Assignment Judge of the County." As adopted, the bill added that alternative but only as to counties of the first class with population less than 800,000. The amendment dealt only with appointments up to the statutory complement. We note that earlier statutes had also given a role to a judicial officer with respect to appointments by the prosecutor to positions authorized by statute. See *R. S.* 2:181–10 and 11. The amendment did no more than assign an additional function to the Assignment Judge. It cannot be assumed the Legislature intended thereby to take away his obligation under the statute of 1874 to deal with needs beyond the provisions made by statute or by budget appropriations. The express disclaimer of that purpose in *N. J. S. A.* 2A:157–19, discussed above, was not repealed or amended.

With respect to assistant prosecutors, *N. J. S. A.* 2A:158–15 specifies in subparagraphs a through d the number which may be appointed in each of four classes of counties. It was amended in 1961 (*c.* 41, § 2, *p.* 414) to contain this provision:

"Assistant prosecutors in addition to those provided for in paragraphs a through d of this section may be appointed by the county prosecutor in any county of the State where there appears to be a reasonable necessity therefor, if approved by order of the assignment judge *and* by resolution of the board of chosen freeholders of the county."

We italicized the word "and." In the bill as introduced, "or" was used. The reason for the change from "or" to "and" was not revealed. That change could express merely a refusal

to permit the freeholders to enlarge the staff without the approval of the Assignment Judge. Obviously that in part was the effect. The question is whether there was the further purpose to deprive the Assignment Judge of the power consistently vested in a judicial officer since 1874 to act whenever a need of law enforcement is not met by the freeholders. The amendatory statute itself does not expressly state that further purpose, and there is no external evidence of it. At best the statute in this respect is equivocal. We think it the sounder course of statutory construction to reconcile the measures, and this is readily done by holding that the 1961 statute empowers the freeholder to provide for additional assistant prosecutors if the Assignment Judge approves while leaving undisturbed the authority of the Assignment Judge to act upon the prosecutor's application whenever the freeholders fail to meet the needs of his office.

We should add some views with respect to procedural aspects. As we said earlier, the Assignment Judge acts as a legislative agent rather than as a judicial officer. Hence he does not sit in review of the action or inaction of the freeholders but rather makes his own original determination. Nonetheless the freeholders do speak for the taxpayers who must meet the added charge, and it therefore is appropriate, notwithstanding the absence of a legislative mandate, that the prosecutor make an initial request of the freeholders unless circumstances excuse that course. For like reasons, it is appropriate that the prosecutor give notice to the freeholders of his application before the Assignment Judge so that the freeholders may communicate their views.[1]

In the matter at hand, the prosecutor did not initially present his full case to the Board. Having already been refused what he had requested, which was less than what he later found to be needed, he thought it useless to call upon

---

[1] For a brief period, the statute of 1874 required notice to the board of freeholders if the sum involved exceeded $150. This requirement was added by *L.* 1927, *c.* 328, over the veto of the Governor who thought the procedure would be too burdensome. The notice provision was deleted by the 1933 amendment discussed in the text.

the Board again. The Board was given notice of the application before the Assignment Judge. The Board did not challenge the prosecutor's presentation other than by raising the issues of power which we have already discussed. We were informed at the oral argument that when it appropriated the funds required by the order under review, the Board simultaneously made its own evaluation of the prosecutor's additional needs, concluding that as to assistant prosecutors, investigators, and clerk stenographers, two of each would be enough. Although we would have preferred another order of events, we do now know that a prior application to the Board would not have led to favorable action by it.

Although the Board did not challenge the factual correctness of the Assignment Judge's determination, we add that our own examination of the record persuades us that his finding should not be disturbed.

The order is affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—NONE.