145 N.J. Super. 288 (1976)
367 A.2d 898
RUSSELL W. THOMAS, PLAINTIFF-APPELLANT,
v.
EDWARD W. McGRATH, UNION COUNTY PROSECUTOR AND THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF UNION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 1976.
Decided December 1, 1976.
*290 Before Judges BISCHOFF, MORGAN and COLLESTER.
Mr. Kenneth J. Grispin argued the cause for appellant (Messrs. Read, Leib, Kraus & Grispin, attorneys; Mr. Walter L. Leib, of counsel).
*291 Mr. Walter M. Korchun, Administrative Assistant, Union County Prosecutor, argued the cause for respondent Prosecutor of Union County.
Mr. Edward J. Toy, Assistant County Counsel, argued the cause for respondent Board of Chosen Freeholders.
The opinion of the court was delivered by BISCHOFF, P.J.A.D., Temporarily Assigned.
Plaintiff appeals from a judgment dismissing his complaint wherein he sought a judgment declaring that he had been appointed to the position of sergeant of county detectives and for injunctive relief.
On or about July 27, 1970 plaintiff was appointed to the staff of the Union County Prosecutor as a county investigator, an unclassified Civil Service position. In May 1972, having passed a Civil Service examination for the position of county detective and having otherwise qualified, plaintiff was appointed to the position of county detective, a classified Civil Service position.
On or about January 27, 1975 plaintiff was appointed provisional Sergeant of county detectives by Karl Asch, the then Prosecutor of Union County. Plaintiff thereafter took a competitive examination for the position of sergeant of county detectives and, by notice dated April 4, 1975, was informed he had passed the examination and, in fact, ranked first of all candidates taking the examination.
By letter dated April 21, 1975 addressed to Prosecutor Asch, plaintiff acknowledged receipt of "Civil Service CS 9 form" notifying him that he had been certified for the position of sergeant of county detectives and indicated he was willing and anxious to accept the position should the prosecutor choose to appoint him.
There existed four vacancies for the position of sergeant of county detectives and, accordingly, the Civil Service certified the names of six persons eligible for appointment. This certification to the prosecutor, dated April 17, 1975, was made by forwarding to him a form entitled "Certification of Eligibles for Appointment" and known as CS 10.
*292 On April 23, 1975 Prosecutor Asch completed form CS 10 by inserting opposite the name of plaintiff, who was number one on the list, plaintiff's serial number, the location of the department and the division where he was to work, and the salary he was to be paid. He did the same for three other men and signed the form.
Instructions printed on the form provided "answer certification completely within 15 days on the carbon copy," and further, "Note you are requested to notify the eligibles of the time and place to report for an interview and advise the Department of Civil Service at the address checked below of the disposition of the certification and the appointments made."
The parties agree that normal procedure requires the prosecutor to forward this certification, when completed, to the Department of Civil Service. That was not done in this instance. Instead, a carbon copy of the completed form was forwarded to the board of chosen freeholders on April 23, 1975. Normal procedure also requires the appointing authority to initiate a request for personnel action so that the appointee may be paid. This is accomplished by forwarding to the freeholders a form designated CS 6. While at oral argument neither party was able to provide any information concerning completion of the form CS 6 as to the plaintiff, we have since been informed, by letter, that this form has been discovered in plaintiff's personnel file. It is dated April 24, signed by Karl Asch, and contains the notation: "per certification dated April 17, 1975"  "promotion is permanent."
On April 25, 1975 defendant McGrath succeeded Asch as Prosecutor of Union County. He withdrew form CS 10 from the board of freeholders and on or about June 17, 1975 altered the form by striking over the designation of plaintiff as an appointee and designating instead Robert L. Rowland, another of the six certified as eligible. He crossed out Asch's signature, signed it on June 17, 1975 and forwarded it to the Department of Civil Service. CS 6 was also completed at this time by McGrath as to Rowland and the others, forwarded to the board of freeholders, and approved by them.
*293 Plaintiff instituted this action in lieu of prerogative writs contending he had been appointed sergeant of county detectives by Asch; that it was improper for McGrath to withdraw CS 10, to alter it by striking out his name and to attempt to appoint Rowland in his place. He sought an injunction against (a) the administration of the oath of office to Rowland, (b) McGrath returning plaintiff to his permanent position of county detective and (c) reducing his salary.
Plaintiff's complaint was filed June 30, 1975, together with a supporting affidavit. The complaint was accompanied by an application for temporary relief. An order to show cause was granted, returnable later the same day. Upon the return of the order to show cause the trial judge heard argument, denied the application for injunctive relief and dismissed the complaint, entering judgment for defendant. Plaintiff filed a motion for reargument, which was also denied. Plaintiff appeals from the judgment dismissing the complaint.
Plaintiff contends his appointment was made when Prosecutor Asch completed and signed the CS 10 form on April 23, 1975.
Defendant, on the other hand, contends that plaintiff's appointment was contingent upon approval by the Department of Civil Service following receipt of the CS 10, and upon the approval of the board of freeholders following receipt of CS 6.
The power to appoint county detectives and sergeants of county detectives is vested by statute in the county prosecutor. N.J.S.A. 2A:157-2; N.J.S.A. 2A:157-4. The only qualification on his power of appointment is that the person so appointed shall be in the classified service of the Civil Service. The fact that appointments, otherwise legal, are made in the waning days  or even waning hours  of a prosecutor's term of office is irrelevant. Robinson v. Kreischer, 97 N.J. Super. 104, 113-114 (Ch. Div. 1967), aff'd o.b. 101 N.J. Super. 482 (App. Div. 1968); Bakely v. Nowrey, 68 N.J.L. 95 (Sup. Ct. 1902), aff'd 68 N.J.L. 732 (E. & A. 1903).
*294 We reject defendant's contention that N.J.S.A. 11:21-1 requires compliance with all the rules and regulations promulgated by the Department of Civil Service and approval by that Department before an appointment is validly made. That statute provides:
No appointing authority shall select or appoint a person for appointment, employment, promotion or reinstatement except in accordance with this subtitle and the rules and regulations prescribed thereunder.
The rules and regulations referred to therein do not pertain to the manner of appointment. Rather, they refer to the qualifications of the person to be appointed or the class from which an appointment or promotion can be made. Such considerations are not applicable here.
Civil Service regulations provide that after receipt of a certification from the list of eligibles the appointing authority shall "appoint one of the three eligibles from the employment list" and "notify the Department of Civil Service of the disposition of the certification within 15 days after receipt of the certification." N.J.A.C. 4:1-12.15.
Regulations pertaining to this report of the appointing authority (N.J.A.C. 4:1-12.18) do not provide that an appointment is conditioned upon making the report to the Department of Civil Service or approval of the appointment by that Department. The necessity for compliance by the appointing authority with certain rules and regulations of the Department of Civil Service does not qualify or restrict the statutory power of appointment. Rules and regulations designed and adopted to insure that an appointee is qualified, a member of the class entitled to the appointment or promotion, and properly placed on the payroll, are administrative details required to implement an appointment.
The exercise of the appointing power vested in the prosecutor by statute is not subject to approval by either the board of freeholders or the Department of Civil Service. Cf. *295 Cetrulo v. Byrne, 31 N.J. 320, 328-329 (1960); Muccio v. Cronin, 135 N.J. Super. 315 (Law Div. 1975).
However, we do not agree with plaintiff that his appointment was necessarily completed when Prosecutor Asch signed CS 10. Plaintiff's right to relief necessarily turns on a determination of whether the action of Prosecutor Asch met, at the least, the minimal requirements for making a valid appointment.
The statute authorizing appointments by the prosecutor does not prescribe any method by which appointments are to be made or the performance of any formal ceremony, such as the taking of the oath of office as a condition precedent to the assumption of the position by the appointee. N.J.S.A. 2A:157-2, 4. "Appointment" is defined in the Administrative Code, N.J.A.C. 4:1-2.1, as follows: "[T]he offer and acceptance of a position on either a permanent or temporary basis." It is elsewhere noted that "An appointment is complete when the last act required of the appointing power has been performed." 3 McQuillan, Municipal Corporations (3 ed 1973), § 12.86.
Obviously, some overt act beyond the existence of an uncommunicated intention to appoint an individual to a position is required. However, such act need not partake of any particular form or formality. It could consist of a written or oral communication to the appointee notifying him of the action or, under some circumstances, a press release might suffice.
There are numerous overt acts which could, under varying circumstances, evidence a valid exercise of the appointment power. We need not consider all possibilities. Where, as here, the statute vests in one individual the sole power of appointment and the exercise of that power is not subject to approval by any other authority, it is necessary to ascertain the intent of the appointing authority where there exists a dispute over whether that power has been exercised.
*296 Such a determination cannot be made on the record before us. There is no indication of exactly what action was taken by Prosecutor Asch respecting the purported appointment of plaintiff. There are no affidavits, depositions or testimony other than the completion of CS 10 bearing on the issue of the prosecutor's intent. Moreover, there is no explanation of how or why a copy of CS 10 came to be in the possession of the board of freeholders, which has no concern with that form. Was this copy intended for the Department of Civil Service and sent to the board of freeholders as a result of a clerical mistake; Was there, in fact, an offer of the appointment to plaintiff and an acceptance by him? These and other questions remain unanswered.
The judgment dismissing plaintiff's complaint was prematurely entered without affording plaintiff an opportunity to prove facts and circumstances from which a proper determination could be made as to whether or not he was appointed.
The judgment is reversed and the case is remanded to the trial court to conduct a plenary hearing and make a proper determination on the facts presented as to whether or not plaintiff was appointed by Prosecutor Asch.
We do not retain jurisdiction.
MORGAN, J.A.D. (dissenting).
We are asked in this appeal to specify the time as of which a Civil Service appointment achieves such finality that it can no longer be interfered with by either the appointing authority, his successor or anyone else. I agree with my colleagues that no statute or court decision provides a direct answer to this troublesome question, and it is quite probable that the Legislature never even considered the problem. There do exist, however, some legislative clues, which together with policy considerations compel a result at variance with the one reached by the majority.
*297 N.J.S.A. 11:21-1 provides:
No appointing authority shall select or appoint a person for appointment * * * except in accordance with this subtitle and the rules and regulations prescribed thereunder. [Emphasis supplied].
In this enactment the Legislature, although acknowledging an appointing authority, nonetheless envisioned that the appointment would be made by that authority in a manner prescribed by rules and regulations to be adopted by the Civil Service Commission. The foregoing provision does not detract from the exclusive power of the appointing authority to make the selection of a person to fill a given position, but merely specifies, by incorporating therein the procedure adopted by administrative rule, the manner and method by which that power shall be exercised. Rules pertaining to the method of making appointments have been adopted. Thus, N.J.A.C. 4:1-12.15(b) provides that the appointing authority "shall notify the Department of Civil Service of the disposition of the certification within 15 days after receipt of the certification." N.J.A.C. 4:1-12.18 requires each appointing authority to "report to the Department of Civil Service forthwith upon any appointment or employment." Admittedly, none of these steps were accomplished in the present case at the time when Asch's successor undertook to make his own appointment.
Similarly, the same act which vested in the county prosecutor the power of appointment both Asch and McGrath sought to exercise in the present matter (N.J.S.A. 2A:157-2) also provided for participation by the board of chosen freeholders in the fixing of salaries over the statutory minimum. N.J.S.A. 2A:157-18. It was from this statutory source that the so-called CS-6 form, "Request for Personnel Action", was generated. Before one selected to fill the job of county investigator or county detective can be paid, the salary, fixed by the prosecutor, must receive the approval of the board of chosen freeholders. The approval was admittedly *298 not obtained in this case; indeed, the CS-6 form was never even sent to the board.
Notwithstanding Asch's failure (or inability on account of time due to the end of his term) to accomplish these administrative and concededly ministerial steps, this court has concluded that plaintiff's appointment may have reached that degree of finality that neither McGrath, nor even Asch himself, possessed any further power to interfere with the selection of plaintiff to fill the job. It is with this conclusion that I most respectfuly disagree.
Because of the large number of Civil Service appointments made annually throughout the State and on various levels of government, certainty as to the time as of which an appointment achieves finality should be a prime, if not the controlling, factor in arriving at a solution to the problem presented. Under the majority's holding, each case in which the problem arises must be settled on its own facts and without any clear and specific guidelines to determination. Neither the appointing authority, his successor, Civil Service, the appointee or, as in this case, the appointees, can know in advance whether the appointment under consideration has become final. Testimony must be presented concerning what was done; credibility may come into issue as when the appointing authority may disagree with an alleged appointee as to what was said or done; the conclusions to be drawn from a given set of facts will be uncertain. In my view, little if anything is accomplished by creating such uncertainty as to the finality of appointments when the certainty thereof is of such paramount concern.
There is no suggestion in the record before us that any irregularity attended plaintiff's appointment sufficient to warrant Civil Service disapproval, or any budgetary considerations precluding approval by the board of chosen freeholders. Hence, approval by those two authorities would have been forthcoming as a matter of course in the present case. In the future, however, cases may arise where that is not so, where the certification was erroneous and where the *299 person selected by the appointing authority could not be legally appointed. Similarly, cases involving budgetary considerations may in the future require disapproval of a submitted appointment by the board. If, however, the appointment is deemed final before approval by Civil Service or the board, what would be the consequences to the appointee in such circumstances? Would his final appointment be capable of being rescinded? Or would he be permitted to serve notwithstanding the illegality of his appointment deemed final according to the majority view? Although a parade of horribles should not be made the basis of an attack on an otherwise correct conclusion, the possibility of such occurrences does argue well against its essential wisdom and propriety.
I see nothing inherently wrong, or even inconvenient, with requiring compliance by the appointing authority with all ministerial steps required by any rule, regulation and statute pertaining to such appointments as a condition to making an appointment final. Such compliance does not dilute or otherwise limit the power of the appointing authority (the county prosecutor in this case) to make the selection of the person to fill the job. All it does is to defer the date on which the appointment achieves finality, from the date of actual selection to the date on which compliance is finally achieved. Adoption of such a rule will permit everyone connected with the appointment to know whether a position has been filled and by whom.
Moreover, this approach is entirely consistent with what statutory authority does exist. As noted, N.J.S.A. 11:21-1 forbids all appointing authorities to select or appoint a person for a given position "except in accordance with this subtitle and the rules and regulations prescribed thereunder." N.J.S.A. 11:22-20 expressly prohibits the payment of salary to an appointee "unless the chief examiner and secretary has approved and notified in writing the respective appointing authority that the person or persons named in said warrant have been appointed * * * in pursuance of law and of the *300 rules made in accordance with this subtitle." Indeed, under this provision it is the Civil Service Commission, through its Chief Examiner and Secretary (apparently the same person) who notifies the appointing authority that the person selected has been appointed, and this can be done only after approval by this agent of the Commission. To say that a person has been finally appointed without having the right to be paid is to empty the appointment of all semblance of reality. The right to be paid is part and parcel of the appointment and an appointment cannot, I submit, be deemed final until all steps necessary to payment for the position have been taken.
In this case plaintiff's appointment required that notice of his selection for the job be sent to the Civil Service Commission; Form CS-10 was provided to perform this function. Furthermore, the salary for plaintiff's appointment required the approval of the board of chosen freeholders; Form CS-6 was provided to secure this approval. I would hold that approval of the appointment by the Civil Service Commission and of the salary by the board of chosen freeholders were conditions to the finality of plaintiff's appointment, and that the appointment was not final until those steps were taken. Since the necessary approvals were admittedly not obtained when McGrath undertook to make his own selection, I see no necessity for a remand. I would simply affirm.