IN THE MATTER OF THE APPLICATION OF HAROLD J. RUVOLDT, JR., PROSECUTOR OF HUDSON COUNTY, FOR AUTHORIZATION OF EXPENDITURES.

Superior Court of New Jersey
Appellate Division

Argued October 5, 1982—Decided October 27, 1982.

84

Before Judges MATTHEWS, ANTELL and FRANCIS.

*Philip L. Halpern,* Assistant Prosecutor of Hudson County, argued the cause for appellant (*Harold J. Ruvoldt, Jr.,* Prosecutor of Hudson County, attorney).

*Kathleen M. Grant,* Assistant County Counsel of Hudson County, argued the cause for respondent (*Francis P. Morley,* Hudson County Counsel, attorney).

The opinion of the court was delivered by

MATTHEWS, P.J.A.D.

Plaintiff appeals from an order entered by the acting assignment judge, dated August 5, 1981, denying him additional funds, and from the order of the assignment judge, entered June 30, 1981, which determined that the prosecutor's power to appoint personnel is subject to the approval of the county executive, whose decision may only be overturned pursuant to *N.J.S.A.* 2A:158–7.

On June 11, 1981 the Prosecutor of Hudson County ("prosecutor") filed a petition pursuant to *N.J.S.A.* 2A:158–7 requesting,

first, increased appropriations for his office for new equipment, more personnel and salary raises; and second, seeking immediate and emergent relief in the form of a court order directing the county to immediately process the requested salary raises. The assignment judge of the county entered an order requiring the Hudson County Board of Freeholders ("Board") to show cause on June 29, 1981 why the relief should not be granted.

On June 17, 1981 the prosecutor moved for temporary relief pending the determination of his application. He sought by means of this motion to have the CS–6 forms setting the salaries for employees of his office processed. The assignment judge ordered on the same day that the motion be heard on short notice.

A hearing was held on the request for interim relief on June 29, 1981. The judge found that the increases must be approved by the county executive, and that if the county were to reject the increases, the prosecutor was entitled to have the judge decide if the increases are necessary. On June 30, 1981 he entered an order holding that the prosecutor has the power to fix salaries subject to approval or rejection by the county executive, whose decision can only be overturned pursuant to *N.J.S.A.* 2A:158–7. The prosecutor appeals from that portion of the judge's order. The assignment judge also ordered that the parties should appear on July 1, 1981, in order to take testimony concerning the necessity of salary increases prior to the full hearing on the prosecutor's application. The hearing was adjourned to July 7, 1981.

In the present application, filed pursuant to *N.J.S.A.* 2A:158–7, the prosecutor sought additional appropriations that would give him a budget of $4,245,981.25, an increase of $1,386,687.52 over his 1980 budget. At the time of the filing of the petition, the Board of Chosen Freeholders had only appropriated $485,300 for an increase in budget.

Prior to taking office the prosecutor had a management survey of the office prepared by the Prosecutor's Supervisory

Section of the Division of Criminal Justice. The survey noted that in 1980 the Hudson County Prosecutor's office ranged 21st among the 21 counties in mean and median salaries for assistant prosecutors, and 20th and 21st in mean and median salaries for investigative personnel, with a resultant high turnover of employees. There was also no regular or annual merit increment structure, nor any formal system of promotions. The survey recommended the institution of a salary and increment structure in order to encourage employees to view their jobs as a career. The Division reviewed the prosecutor's needs and his budget to come up with a figure that they both could support, and as the prosecutor's original request was higher than the Division's estimate, the prosecutor amended his figure to comport with that of the Division.

An auditor working for the Evaluation and Management Services Section of the Division of Criminal Justice expressed the opinion, which he testified was concurred in by the Director of the Division of Criminal Justice, that the figure proposed represented the minimum amount necessary for the prosecutor to perform his function.

The Division also found that, while the present number of assistant prosecutors was adequate, the investigative staff should be increased from 66 to 90 in order to create a proper ratio of support staff for the prosecutors. The Division also recommended the addition of nine more clerical personnel, increasing the total number to 74.

The Division also estimated that the prosecutor needed ten replacement and five new cars with radios and sirens, at a cost of about $125,000; word processing equipment, at a cost of about $40,000; about $15,000 worth of dictation equipment; rearrangement of and equipment to automate the record room; a radio system, at a cost of $75,000; PROMIS/GAVEL, a computerized program of the prosecutor's office and courts regarding management, at a cost of about $12,000 for a match of federal funds that would enable Hudson County to receive

$125,000 worth of equipment; $11,000 for office equipment for the new personnel requested, and electronic surveillance equipment at a cost of $5,900. These recommendations totalled $307,900.

In order to determine what fiscal problems would be caused should the prosecutor's request be implemented, Edward F. Clark, the Hudson County Executive, also testified. Clark said that Hudson County has an ever-increasing problem staying within the limits of CAP, and that the county arrived at the figure by which it increased the prosecutor's budget for primarily economic reasons.

The acting assignment judge noted in his opinion that it was his intent to resolve the dispute within the prosecutor's existing appropriations, if possible, or at least to maintain a "sensitivity to the Freeholders' overall CAP problem while insuring that the prosecutor can meet the demands of the criminal business of the county."

The judge agreed that the existing salary structure was unjust and unfair, and so he adopted the salary schedule for 1981–82 which he felt was fair. He ordered that the prosecutor's goal of rough statewide parity of salaries with the state salary averages should be met over two years.

However, although the judge believed that the prosecutor demonstrated that new equipment and additional personnel were desirable, he did not find that they were necessary in the sense of being "reasonably required." He rejected the request on three bases: failure to show need in light of public resistance to increased governmental expenditures, as reflected by the CAP laws; that the Hudson County Prosecutor's office had been able to meet the county's needs, and that the unification of the criminal justice system through communications equipment (*e.g.*, PROMIS/GAVEL, word processing) is a state, not a county responsibility.

■ The prosecutor maintains that the trial judge erred in his determination of appellant's application for funds in excess of

those appropriated by the Board of Freeholders in that he considered the request in light of the limited resources of the county government, as aggravated by the CAP law limits on increased expenditures, *N.J.S.A.* 40A:4–45.2, and increased tax levies, *N.J.S.A.* 40A:4–45.4. We agree that the judge should have limited his inquiry to whether the increased appropriations were reasonably necessary. Since the inability of the county to appropriate the extra money while staying within its CAP limitations was a major basis of the decision, we find the error was prejudicial.

■ The assignment judge has the power, pursuant to *N.J. S.A.* 2A:158–7, to increase appropriations made for the prosecutor by the county board of freeholders:

> All necessary expenses incurred by the prosecutor for each county in the detection, arrest, indictment and conviction of offenders against the laws shall, upon being certified to by the prosecutor and approved, under his hand, by a judge of the superior court or of the county court for such county, be paid by the board of chosen freeholders of such county. *The amount or amounts to be expended shall not exceed the amount fixed by the board of chosen freeholders in its regular or emergency appropriation, unless such expenditure is specifically authorized by order of the assignment judge of the superior court for such county.* [Emphasis supplied]

The leading case interpreting this section is *In re Bigley Application,* 55 *N.J.* 53 (1969). When the prosecutor of a county applies for funding in excess of appropriations, "the judicial officer is called upon to make his own original evaluation of the prosecutor's request." *Id.* at 57. The judge therefore does not act as a judicial, but as a legislative agent. *Id.* In exercising this delegated legislative function, the judge is not required to pass upon whether the actions of the board were reasonable or not, but rather is to decide how much money the prosecutor ought to have in order to function effectively. *Id.* at 57. The authority of the assignment judge as to excess appropriations is final and conclusive. *Id.* at 59.

The point of conflict in this case is the question of the impact of *N.J.S.A.* 40A:4–45.2 and *N.J.S.A.* 40A:4–45.4 upon the power to increase appropriations. The latter provides: "In the prepa-

ration of its budget, a county may not increase the county tax levy to be apportioned among its constituent municipalities in excess of 5% of the previous year's county tax levy." A 5% limit is also placed upon increases in final appropriations, *N.J.S.A.* 40A:4–45.2. Any additional funds ordered by the assignment judge must be provided for without pushing the entire budget over the CAP limitation. The only exception to this limit which might possibly have applied, *N.J.S.A.* 40A:4–45.4(e), which excepts levies for "Expenditures mandated after the effective date of this act pursuant to State or Federal law," has been held only to apply to expenditures for new services or activities, the costs of which were not reflected in pre-1977 budgets, *Clark v. Degnan,* 83 *N.J.* 393, 402 (1980).

The judge based his finding that the additional funds requested by the prosecutor were not reasonably necessary upon his determination that the county would be unable to provide the funds within the CAP limitation without causing other areas of the budget to suffer.

■ We know of no authority either entitling or requiring an assignment judge to consider the CAP law in making a *Bigley* determination. The intent of the statute giving to a judicial officer the power to provide additional necessary funds at the request of the prosecutor was

> . . . to confer upon the prosecutor authority to provide reasonable means to aid him in the performance of his official duties, with a guaranty that the necessary expenses incurred should be paid; and it was left to the court, by the certificate and approval of the presiding judge, to determine the reasonableness of the means employed, and the necessity of the expenses incurred. [*Lindabury v. Ocean Cty. Freeholder Bd.,* 47 *N.J.L.* 417, 424 (Sup.Ct.1885), cited in *Bigley,* 55 *N.J.* at 56]

Thus, the grant of power to the assignment judge to override the board of freeholders evinces an apparent intention to give the funds required by a prosecutor to carry out his duties priority over funds appropriated by the board for other purposes. *Rolleri v. Lordi,* 146 *N.J.Super.* 297, 305 (App.Div.1977), notes that this statute gives the prosecutor unparalleled power to incur expenses in the arrest and prosecution of offenders.

The statute "indicates a legislative intent to place the prosecutor in a dominant position with relation to the freeholders for the purpose of maintaining his independence and effectiveness." *In re Mercer Freeholder Bd. v. Mercer Cty. Pros'r.,* 172 *N.J.Super.* 411, 414 (App.Div.1980), citing *In re Bigley Application,* 55 *N.J.* at 56.

If the assignment judge were to consider appropriations in light of the county's CAP limitations he would be required either to make an inquiry into the reasonableness of each county appropriation as compared with the needs of the prosecutor's office, or to defer to the decisions of the board as to which areas most need appropriations. There is no basis in *N.J.S.A.* 2A:158–7 for such a judicial inquiry into the reasonableness of county expenditures; the statute only refers to a power to see that the prosecutor has the funds which he needs.

The delegation of legislative power to the judiciary to increase funds for the prosecutor has been held constitutional because the judiciary is directly concerned with the efficient disposition of criminal and *quasi*-criminal matters. *In re Schragger Application,* 58 *N.J.* 274, 279 (1971). However, the corollary of this is that it would be an improper delegation of legislative power to the judiciary to give it the power to determine whether other appropriations are more or less necessary than those made for the prosecutor, which would be the case if the CAP limit were considered. In cases where the CAP limit on expenditures has already been reached, the only way that the assignment judge could avoid making a budget for the county himself would be by deferring to the delineation of appropriations already made by the board, thereby causing the result that the statute was intended to avoid.

The only way to resolve the conflict between the CAP law and *N.J.S.A.* 2A:158–7 is by permitting the judge to authorize reasonable expenditures by the prosecutor, leaving it to the board to work out the rest of its budget. This accords with the case law holding that the prosecutor's funding should have priority

over that of other entities, *Rolleri v. Lordi,* 146 *N.J.Super.* at 305. It is also consistent with *N.J.S.A.* 40:4–45.2, which limits increases in the bottom line amount of the budget, but does not limit the percentage of increase in any particular line item. *Clark v. Degnan,* 83 *N.J.* at 399, n. 1.

The prosecutor also claims that the assignment judge erred in ordering that the county prosecutor's power to set salaries is subject to approval or disapproval by the county executive, even in instances where the salaries as set would be within the available appropriations. Under this holding, a rejection by the executive could only be overturned by the assignment judge pursuant to *N.J.S.A.* 2A:158–7. We believe this to be a fair reading of the statute.

The statute dealing with the manner in which the salaries of assistant prosecutors are set is *N.J.S.A.* 2A:158–16, which states that salaries are "to be fixed by resolution of the board of chosen freeholders on recommendation of the county prosecutor." *N.J.S.A.* 2A:157–18 creates a similar system to set the salaries of detectives and investigators.

Although the language of the statute appears to give the board of freeholders, here represented by the county executive, a power of approval over a prosecutor's salary requests, plaintiff claims that this section does not control when the desired salaries are within his appropriations. There does not, however, appear to be any basis for this argument, since the statute seems clear on its face and the cases which the prosecutor cites lend no real support to his theory of an exception.

The prosecutor attempts to justify his argument on the basis of the legislative policy of giving the prosecutor "power not parallelled elsewhere" to incur expenses in carrying out his duties, *State v. Winne,* 12 *N.J.* 152, 167 (1953). This policy was also noted by this court in affirming a PERC decision holding that the prosecutor rather than the county was the employer of the workers in his office for purposes of that statute, *N.J.S.A.* 34:13A–1 *et seq.* We held that this determination was "conso-

nant with the intent of the Legislature in according the prosecutor a dominant status in relation to the appointment of personnel and the establishment of salaries and the judicial recognition of that status." *In re Mercer Freeholder Bd. v. Mercer Cty. Pros'r.*, 172 *N.J.Super.* at 414. However, we note that this statement was made in explaining the legislative intent behind *N.J.S.A.* 2A:158–7. *Id.* Whatever dominance the Legislature intended to give the prosecutor with regard to expenditures is assured by this statute.

We find that the assignment judge's determination that *N.J.S.A.* 2A:158–16 and 2A:158–18 apply even where the prosecutor acts within his appropriations is consistent with the desire to grant him autonomy. The prosecutor always has his remedy under *N.J.S.A.* 2A:158–7 to allow him to obtain necessary funds. Since the prosecutor has the power to obtain funds necessary to carry out his function through a *Bigley* hearing, the policy of giving him financial autonomy does not require the court to read into the statute an absolute power to set salaries within his appropriations, especially when, as here, the statute when fairly read appears to require otherwise.

Neither does the fact that the prosecutor has an absolute power to appoint assistants under *N.J.S.A.* 2A:158–15 require the court to read an exception into the statute. The power of appointment is a form of autonomy necessary for the prosecutor to function because it assures his right to confidentiality, *Cetrulo v. Byrne*, 31 *N.J.* 320, 332 (1960). In *Thomas v. McGrath*, 145 *N.J.Super.* 288, 297 (App.Div.1976), rev'd 75 *N.J.* 372 (1978), the Supreme Court adopted the dissent below of Judge Morgan, who found that *N.J.S.A.* 2A:157–18 required the approval of the freeholders in setting salaries above the statutory minimum. Judge Morgan stated that requiring such steps did not unduly limit the power of appointment. *Id.* 145 *N.J.Super.* at 299. Thus, such limitations have not been found to interfere with the prosecutor's function. We can see no function of the prosecutor that is endangered by requiring him to have his budget ap-

proved by the board of freeholders, since he still has the power to bypass them under *N.J.S.A.* 2A:158–7.

■ We agree with the county in its cross-appeal where it argues that *N.J.S.A.* 2A:158–7 gives the assignment judge the power to bind the county to an increase in one particular year's budget only.

■ *N.J.S.A.* 40A:4–3 provides that "The governing body of each local unit shall adopt a budget for each fiscal year." *N.J.S.A.* 40A:4–57 forbids a board to "expend any money . . . , incur any liability, or enter into any contract which by its terms involves the expenditure of money for any purpose for which no appropriation is provided, or in excess of the amount appropriated for such purpose." These two sections, when read together, lead to the conclusion that a municipality, or in this case a county, cannot bind itself, by contract or otherwise, to expenditures for more than one year, *Graziano v. Montville Tp.,* 162 *N.J.Super.* 552, 563–564 (App.Div.1978), certif. den. 79 *N.J.* 462.

The language of *N.J.S.A.* 2A:158–7, given its most logical reading, appears to limit the power of the assignment judge to increase appropriations to a particular year's appropriation. The power of the judge is stated in the form of an exception: the board of freeholders is to have the final say "unless" the assignment judge specifically authorizes an exception. *N.J.S.A.* 2A:158–7. In *In re Schragger Application,* 58 *N.J.* at 277–278, the court interpreted *Bigley* to require that the prosecutor present his case to the board of freeholders for an initial decision, and to the assignment judge only when "the prosecutor could not meet the imperative duties of his office without the relief" of *N.J.S.A.* 2A:158–7. Thus, if the statute creates an exception allowing the assignment judge to increase an appropriation when it does not provide what the prosecutor needs to function, this exception for emergency relief should not allow the judge to commit the county to expenditures to which it could not commit itself.

Furthermore, the procedure established under the statute requires the prosecutor to apply to the board of freeholders before turning to the judge. That procedure would be nullified if the judge could commit funds for future years, since the prosecutor would not be required to apply to the board for money for those years.

The prosecutor argues that *Bigley,* 55 *N.J.* at 55, supports his thesis that the judge can order funds for future years, because the *Bigley* judge authorized the hiring of new people, which would necessarily affect the budgets for future years. This argument lacks merit. If true, the county would be expending funds for future years in violation of *N.J.S.A.* 40A:4–3 and *N.J.S.A.* 40A:4–57 every time it hired an employee who could be presumed to remain for more than one year. The effect on the budgets of future years caused by hiring these employees is distinguishable from earmarking funds for specific salary raises *in futuro.*

The prosecutor next claims that we should reconsider the 1982 salary structure created by the judge in light of the Legislature's later modification of the salary structure for assistant prosecutors, and that we should create a salary scheme structurally consistent with the one the acting assignment judge ordered. We disagree.

The salaries of assistant prosecutors are required by *N.J.S.A.* 2A:158–15.2(a) and (b) to be not less than 30% and not more than 90% of the salary of the county prosecutor. The county prosecutor is to receive the same salary as a judge of the county court. *N.J.S.A.* 2A:158–1.2. The change in the salary structure which the prosecutor claims undermined the ordered salary structure was accomplished by the passage of a pay raise for judges, effective January 19, 1982. *N.J.S.A.* 2A:1A–6.

Since the assignment judge does not have the power under *N.J.S.A.* 2A:158–7 to order additional appropriations *in futuro,* the question of whether his salary schedule should be reconsidered in light of *N.J.S.A.* 2A:1A–6 is moot, since he did not have the power to set salaries for 1982 at all.

■ Even if the judge had power to order a salary schedule for 1982, there does not appear to be any basis for a reconsideration of the judge's decision in light of the subsequent raises. It is true that "an appellate court on direct review will apply the statute in effect at the time of its decision, at least where the Legislature intended that its modification be retroactive to pending cases." *Kruvant v. Cedar Grove,* 82 *N.J.* 435, 440 (1980). The purpose of this principle is to "effectuate the current policy of the legislative body." *Id.* However, there does not appear to be any intent on the part of the Legislature to give this statute retroactive effect, nor does it create any rule of decision arising from a legislative policy. The provision is simply a salary raise.

The general rule of statutory construction followed in this State favors the prospective application of statutes. *Gibbons v. Gibbons,* 86 *N.J.* 515, 521 (1981). Although there are exceptions to this rule, the instant case does not fall into any of them. The Legislature has expressed no intent to make the application retroactive. *Id.* at 522. Although the prosecutor so urges, it is not ameliorative or curative. See *id.* at 523. Such a designation implies a lessening of harshness or injustice, for example, amelioration of, *e.g.,* sentencing requirements, *In re Smigelski,* 30 *N.J.* 513, 526–527 (1958), not a simple benefit as provided here.

■ In granting the prosecutor additional funding under a *Bigley* application, the assignment judge acts as a legislative agent. *Bigley,* 55 *N.J.* at 57. The judge also acts as a legislative agent in appointing probation officers, *In re: Bergen Cty. Probation Officers' Salaries,* 58 *N.J.* 422, 426 (1971), which appointments can only be set aside if it is shown that the decision was arbitrary, capricious, and unreasonable. *Id.* at 427. The same standard applies to review of decisions rendered pursuant to *N.J.S.A.* 2A:158–7.

Since we have determined that the consideration of the prosecutor's needs in light of the CAP limitations on spending was arbitrary because no consideration was or could have been given

to the rest of the county's budget to determine which features were less necessary than those requested by the prosecutor, the cause must be remanded to the assignment judge for appropriate consideration.

We have been advised at oral argument that most of the additional items of equipment requested by the prosecutor have been provided by the county. We will not disturb the order insofar as it relates to them.

The case is remanded for proceedings not inconsistent with the foregoing opinion.