HERBERT H. TATE, JR., IN HIS CAPACITY AS THE PROSECUTOR OF ESSEX COUNTY, PLAINTIFF-RESPONDENT, v. NICHOLAS R. AMATO, IN HIS CAPACITY AS ESSEX COUNTY EXECUTIVE, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 15, 1987—Decided October 5, 1987.

Before Judges DEIGHAN, COHEN and LANDAU.

*H. Curtis Meanor,* Acting Essex County Counsel, argued the cause for appellant (*Norman Schulaner,* Assistant County Counsel, on the brief).

*John S. Redden,* Deputy First Assistant Prosecutor, argued the cause for respondent (*Herbert H. Tate, Jr.,* Essex County Prosecutor, attorney; *Marc J. Friedman,* Assistant Prosecutor and *John S. Redden,* on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

This is an appeal by defendant Essex County Executive, Nicholas A. Amato (the Executive), from an order of June 22, 1987 entered by the Assignment Judge of Essex County after summary proceedings in an action in lieu of prerogative writ. The order directed that the Executive immediately process certain personnel forms necessary to enable plaintiff-respondent, Essex County Prosecutor Herbert H. Tate, Jr. (the Prose-

cutor), to fill certain vacant positions in his office. The order has been stayed. Leave was granted to the Essex County Board of Chosen Freeholders (Board) permitting them to intervene. At oral argument, we were informed that the Board joined in the arguments made by the Executive.

We reverse.

The facts are essentially uncontroverted. The Executive refused to execute personnel forms for six assistant prosecutors, one legal assistant, seven law interns, five clerk-typists and one clerk-stenographer. The Prosecutor filed a complaint and secured an order directing the Executive to show cause why a mandatory order should not be entered directing that the personnel forms be executed. Prior to argument on return of the order, five personnel forms were processed. The Executive says that the remaining forms could not be processed because the new hires would create a budget deficit when the impact of their hiring was projected to year-end.

It is not disputed that if all of the new hires were processed,[1] absent any other increases or decreases in actual expenditures through factors such as attrition or governmental grants, the deficit of $193,000 previously projected for 1987 in the Prosecutor's budget approved for that year would escalate to at least $308,000.

The Prosecutor says, however, that he fully intends to live within the approved budget, and that if additional federal or state grants, or attrition, do not resolve the projected budget deficiency, he will lay off sufficient unclassified at-will employees to maintain the budget.

Inasmuch as the order under review was stayed, the projected deficiency has necessarily decreased, partly because of non-processing of new hires, and partly because of actual attrition. Except for the budget issue, there is no present question about

---

[1] As of July 1, 1987.

authorization of the additional prosecutor positions or the amount of their salaries.

During the pendency of the present litigation, the County of Essex adopted a budget appropriating $11,900,000 to the Prosecutor's office, including $10,984,344 for salaries and wages.

Although *N.J.S.A.* 2A:158–15(a) provides for the appointment of only 15 assistant prosecutors in counties of the first class such as Essex, the statute goes on to provide:

... Creation of new or additional positions of assistant prosecutor as authorized by paragraphs a. through d. of this section, as hereby amended, shall require authorization by the governing body of the county.

Assistant prosecutors in addition to those provided for in paragraphs a. through d. of this section may be appointed by the county prosecutor in any county of the State where there appears to be a reasonable necessity therefor, if approved by order of the assignment judge and by resolution of the governing body of the county.

Under *N.J.S.A.* 2A:158–7:

All necessary expenses incurred by the prosecutor ... shall, upon being certified to by the prosecutor and approved, under his hand, by a judge of the superior court ... be paid by the county treasurer whenever the same shall be approved by the board of chosen freeholders of such county. The amount or amounts to be expended shall not exceed the amount fixed by the board of chosen freeholders in its regular or emergency appropriation, unless such expenditure is specifically authorized by order of the assignment judge of the superior court for such county.

Thus, the statutory scheme involves the freeholders in approving the number of assistant prosecutors over 15 and the expenses of the Prosecutor, subject to the ability of the Assignment Judge as legislative agent to authorize that the amounts appropriated be exceeded, and to approve appointment of additional assistant prosecutors. We were informed at oral argument that in May 1987 the Assignment Judge set the number of assistant prosecutors in Essex County at 109.

The request for personnel form processing which is the subject of this appeal does not require more than 109 assistant prosecutors. However, the Executive says that because he is charged with the statutory duty of keeping expenditures within budgetary limits, he cannot be compelled to perform the minis-

terial function of approving personnel forms which, would cause expenditures to exceed budget when projected to year end.

The Prosecutor argues that escalating crime and high rates of serious drug arrests require the Prosecutor to fill all authorized positions, "... despite the possibility of a short-fall which would require the Prosecutor to make adjustments at the end of the year in order to stay within his appropriations."

As the official charged with law enforcement in Essex County (see *e.g.*, *State v. Winne*, 12 *N.J.* 152 (1953); *In re Ruvoldt Application*, 187 *N.J.Super.* 81, 90 (App.Div.1982)) the Prosecutor argues that he must be free to decide how and when to spend the funds appropriated, even if this means year-end terminations of unclassified employees in order to meet budget. Moreover, the Prosecutor points out, as did the Assignment Judge in ruling upon the application, that it is uncertain whether the projected deficit will occur, because of possible new governmental grants and increases in "slip-page" through attrition.

By contrast, the Executive urges that the order of the Assignment Judge violates *N.J.S.A.* 2A:158–7 which provides that the amount of funds expended by the Prosecutor shall not exceed the amount fixed by the Board, and *N.J.S.A.* 40A:4–57 which prohibits public bodies from entering contracts which involve expenditures in excess of amounts appropriated for those purposes. The Executive also urges that he is bound by § 7.6 of the Essex County Administrative Code which provides that "... no payments shall be made if the total salary cost forecast is greater than the fiscal year appropriation for salaries and wages...."

The Prosecutor rejoins that the Assignment Judge's order specifically provides that the Prosecutor must make necessary personnel or pay cuts if it should appear that he will overspend allocated funds. He argues that, so long as he stays within appropriations, the county may not interfere with the number

of personnel with which he elects to run his office, even if this means substantially curtailing its operations when funds run out. Essentially, he says that the Legislature has exempted the office of prosecutor from close fiscal supervision by the county.

We note that the Executive and the Board do not challenge the Prosecutor's right to request and secure additional appropriations under *N.J.S.A.* 2A:158–7 as set forth in *In re Application of Bigley*, 55 *N.J.* 53 (1969). Neither do the Executive and Board challenge the Prosecutor's right to determine *how* funds should be spent, except to insist upon enforcement of the County Administrative Code provision prohibiting payments which portend that expenditures will exceed appropriations. In such circumstances, the county officials say that the Prosecutor must secure authorization by means of a *Bigley* application to the Assignment Judge in his capacity as legislative agent (see *In re Ruvoldt Application*, 187 *N.J.Super.* 81 (App.Div.1982)).

We recognize and reaffirm that the statutory scheme is to: "... place the prosecutor in a dominant position with relation to the freeholders for the purpose of maintaining his independence and effectiveness." *In re Mercer Freeholder Bd. v. Mercer Cty. Prosecutor*, 172 *N.J.Super.* 411, 414 (App.Div.1980). *See also, State v. Winne, supra; Ruvoldt Jr. v. Clark Jr.*, 204 *N.J.Super.* 438, 442 (Law Div.1983). However, effectiveness properly should be maintained through use of the legislative plan, which is premised on necessity.

As we earlier observed, when the Assignment Judge authorizes a level of assistant prosecutors exceeding 15 under *N.J.S.A.* 2A:158–15 because of "reasonable necessity," or when he authorizes the prosecutor, by order, to exceed expenditures under *N.J.S.A.* 2A:158–7, he acts as a *legislative* agent.

The present *in lieu* application was made to the Assignment Judge in his *judicial* capacity, not to order compliance with his legislative order for 109 prosecutors or to compel extra funding sufficient to maintain that necessary level. Rather, the Prose-

cutor has here requested the Assignment Judge to compel the Executive to process forms which would facially produce an over-expenditure, unless the Prosecutor were to unilaterally disregard the staffing level legislatively set by the Assignment Judge in response to the Prosecutor's own earlier representation of necessity under *N.J.S.A.* 2A:158–15.

This assessment of necessity by the Assignment Judge must be premised upon customary and usual year-round operation, unless specifically otherwise presented to the Assignment Judge when he is called upon to make a *N.J.S.A.* 2A:158–15 order. The orderly functioning of the Prosecutor's office is not the only issue implicated. We must assume that the Legislature also considered the disruptive effect a closed or partially-functioning prosecutor's office would have upon the prompt and efficient administration of justice, including ripple consequences in the assignment of judges, sheriffs' officers, public defenders, probation officers and others in the justice system.

Thus, the Prosecutor and the Assignment Judge acting as legislative agent each has the duty to assure operation of the Prosecutor's office at the levels determined to be necessary under *N.J.S.A.* 2A:158–15. If funding is inadequate when projected based upon those necessary levels, the remedy ordinarily should be to make a *"Bigley"* application and secure a determination under *N.J.S.A.* 2A:158–7.

Where, however, the Prosecutor has strong evidence, based upon normal rates of attrition or actual attrition, or based upon newly committed governmental grants, that the requisite necessary level of staffing clearly can be maintained without a funding deficit, an application in lieu of prerogative writ such as the present one may be supportable. Such request for relief in lieu of *mandamus*, however, must carry with it the heavy burden of establishing that the duty of the Executive to process the personnel forms is purely ministerial, clear and definite. This *mandamus* standard was not here met, because there was uncertainty respecting future grants and attrition,

and the Executive had the duty to avoid exceeding spending limits, absent a prior determination under *N.J.S.A.* 2A:158–7. The remedy of a writ in lieu of *mandamus* is available only where the ministerial duty is clear, and wholly free of the element of discretion. *Perry v. Giuliano,* 46 *N.J.Super.* 550 (App.Div.1957); *Case v. Daniel C. McGuire, Inc.,* 53 *N.J.Super.* 494 (Ch.Div.1959).

Accordingly, the order under review is reversed, without prejudice: (1) to institution by the Prosecutor of a *Bigley* proceeding to assure the level of staffing previously represented and determined to be necessary; or (2) to renew an *in lieu* application premised upon a clear evidential showing that the requested level of staffing is assured within the appropriated budget based upon a changed level of grants and actual attrition.

We do not retain jurisdiction.