923 A.2d 368 (2006)
393 N.J. Super. 425
In the Matter of the Application of Robert L. TAYLOR, Cape May County Prosecutor, for an Order Directing the Cape May County Board of Chosen Freeholders to Appropriate Necessary Funds for the Cape May County Prosecutor's Office.
Superior Court of New Jersey, Law Division, Cape May County.
Decided June 8, 2006.
*369 Robert L. Taylor, Cape May County Prosecutor, for petitioner Cape May County.
Russell L. Lichtenstein, Atlantic City, for respondent Cape May County Board of Chosen Freeholders.
WILLIAM C. TODD, III, P.J.Ch.
This opinion deals with a petition filed by the Cape May County Prosecutor (hereinafter "the Prosecutor") seeking authorization for increases in the salaries and wages of his employees over the amounts authorized by the Cape May County Board of Chosen Freeholders (hereinafter "the Board") in its budget for the 2006 calendar year. That request, commonly referred to as a Bigley application, was based upon the provisions of N.J.S.A. 2A:158-7, and the opinion in In re Bigley, 55 N.J. 53, 259 A.2d 213 (1969). The resolution of this request requires the court to address a number of issues including the question of whether the request is, in the most basic sense, reasonable. Additional issues are presented as to the relationship between the collective negotiations process, the budget process, and the procedure to be followed in presenting Bigley applications to the court. For the reasons noted below, the court has authorized some but not all of the increases requested.

BACKGROUND
Each county prosecutor is a constitutional officer, appointed by the Governor with the consent of the Senate, for a term of five years. N.J. Const. art. VII, § 1, ¶ 5. By statute, the prosecutor is responsible for the detection, arrest, indictment, and conviction of those who violate the law. See N.J.S.A. 2A:158-5. N.J.S.A. 2A:158-7 deals with the funding of the prosecutor's office and is unique. The prosecutor's expenses are to be paid by the county treasurer, provided the payments to be made by the treasurer are not to exceed the amount authorized by the board of chosen *370 freeholders, unless specifically authorized by the court.
For a number of years, the Cape May County Prosecutor's Office was supervised by a series of acting prosecutors. That continued through October 2004, when Prosecutor Taylor was sworn into office. The petition now before the court was filed by the Prosecutor in March 2006. In the intervening period, the Prosecutor and the Board had entered into a number of collective negotiations agreements with negotiating units representing many of the employees of the Prosecutor's office. Two separate budgets also were considered and adopted by the Board, after receiving some input from the Prosecutor. The specific sequence of events bears on the court's analysis, and will be briefly reviewed.
The Prosecutor was sworn into office in October 2004. Within a relatively short period of time, negotiations began with a number of collective negotiations units representing most, but not all of the employees in the prosecutor's office. In each case the negotiations were conducted by Steven O'Connor, the County Administrator. The Prosecutor was aware those negotiations were taking place and that the County Administrator was conducting those negotiations. He assumed, based on his discussions with the County Administrator, that it was generally appropriate to permit the negotiations to proceed in that fashion. In any event, the Prosecutor did not take any active role in the negotiations themselves. The County Administrator was successful in reaching agreement with each of the collective negotiations units in question. Formal collective negotiations agreements were prepared and executed by January 2005. In each case, the agreements were submitted for approval by both the Board and by the Prosecutor, and were executed by each of them.
Five separate collective negotiations agreements were executed. There were separate agreements with (1) Assistant Prosecutors, (2) Detectives, Investigators and Sergeants, (3) Captain and Lieutenants, and (4) the Prosecutor's Employees Organization, consisting largely of secretarial personnel and (5) a collective negotiations unit consisting of only two employees, the Prosecutor's secretary and the office manager. Each agreement covered the period from January 1, 2005, through December 31, 2008. With the exception of the agreement entered into with the Assistant Prosecutors, the agreements established the salary levels through December 2008, by reference either to the salaries of each named employee, or by reference to the position held by the employee in question, providing for increases in each calendar year. The agreement entered into with the Assistant Prosecutors was unique in providing that the salaries of the Assistant Prosecutors would be subject renegotiation on an annual basis in October of each year. The agreements cover almost all of the Prosecutor's employees. The only exceptions are the First Assistant Prosecutor, the Chief of Detectives, and a group of five agents and one chemist. Their salaries are also at issue here.
The collective negotiations agreements were executed by the collective negotiations units in question, the Board, and the Prosecutor by January 2005. The County's budget is reviewed annually, on a calendar year basis. For the calendar year 2005, that process was presumably completed sometime in the spring of 2005 through appropriate presentations to the Board. In 2005, the Prosecutor presented a number of requests for additional staffing and/or funds, many of which were not incorporated into the budget adopted by the Board. The Prosecutor elected not to pursue a Bigley application at that time.
*371 During this time the Prosecutor became concerned with his relationship with the Board and his ability to obtain the funds he considered necessary to operate his office. That concern was apparently based on a number of factors. Based on discussions with some of his fellow county prosecutors, the Prosecutor concluded he should have been more actively involved in the collective bargaining process and that he, rather than the County Administrator, should have been responsible for dealing with the collective negotiations units in question. That conclusion was consistent with existing case law that will be reviewed in some detail below. Statistical information provided by the Division of Criminal Justice, budget submissions by the Prosecutor's predecessors, and more informal discussions indicated to the Prosecutor that the office was understaffed and that salaries and wages were inadequate, at least when the office was compared with other prosecutors' offices around the state. By the fall of 2005, the Prosecutor had determined to take a more aggressive role with respect to his budget.
By November 2005, the Prosecutor asked the Attorney General for authorization to proceed with a Bigley application. In addition, the Prosecutor asked the Division of Criminal Justice to prepare a staff analysis of his office. That analysis was completed in December 2005. The analysis was based almost entirely on a comparison of the staffing levels at the Cape May County Prosecutor's Office with staffing levels in two other counties, selected by the analyst in question based on the workloads in each county. The analysis was based on a variety of measures, and indicated the workloads in Cape May were well above the average workloads in those two other counties. The Prosecutor had access to other statistical information indicating salary levels in his office were also well below the average salaries for prosecutor's office throughout the state. In early December 2005, the Attorney General authorized the filing of a Bigley application, also directing that the application not be filed until the budget process for 2006 had been completed.
During that same time, the 2006 budget process had begun. The Prosecutor's request for permission to proceed with a Bigley application was submitted November 14, 2005. Within a few days, the Prosecutor submitted his budget request for 2006 to the Board. Notably, that budget request was more limited than the requests ultimately presented to the court through the Bigley petition. That budget submission, however, included requests for additional staff throughout the office. It also requested increases in salaries and wages with respect to a number of employees, but not necessarily in the amounts requested through this application. By way of example, the budget request itself suggests that the salaries of most of the secretarial staff and investigators would remain at the levels set in the collective negotiations agreements negotiated in January 2005. This application requests additional increases for those employees, over those provided for in the collective negotiations agreements in question and in the budget request.
By the spring of 2006, the Prosecutor had concluded it would be appropriate to increase the salaries and wages of the employees covered by the collective negotiations agreements, beyond the increases which had been agreed to in January 2005. On that basis, the Prosecutor elected to approach each collective negotiations unit, offering to "reopen" the prior negotiations, to permit the negotiation of additional salary increases. As one would expect, each collective bargaining unit agreed to reopen the prior agreements. By March 2006, separate addenda had been prepared for *372 each collective negotiations unit. In each case, the addendum provided for an increase in salaries. With the exception of an addendum applicable to the Assistant Prosecutors, the increases agreed to extend through the expiration of collective negotiations agreements in question, in December 2008. As with the original agreements, the addenda provided for increases in each calendar year. The various addenda were executed by both the Prosecutor and the collective negotiations units in question and were then presented to the Board in mid-March 2006. The Board has not accepted those proposed addenda.
The collective negotiations agreement entered into with the Assistant Prosecutors did not establish salary levels through 2008, as was the case with each other agreement. The Assistant Prosecutors' agreement provides that salaries are subject to renegotiation in October of each year. By the fall of 2005, it was apparently clear to all involved that the Prosecutor was considering pursuing a Bigley application. In that context additional negotiations occurred with respect to the salaries to be paid to the Assistant Prosecutors. Again, those negotiations involved the County Administrator and a representative of the collective negotiations unit, but did not involve the Prosecutor. The County Administrator and the Assistant Prosecutors reached an agreement, and a formal collective negotiations agreement was prepared, providing for a five percent increase in salaries for 2006. The Prosecutor did not agree to those terms, having satisfied himself that more substantial increases were appropriate. That apparently was not clear to the County Administrator who submitted the new agreement to the Board. It was approved by the Board, but has never been accepted or signed by the Prosecutor. Notably, the Prosecutor's budget request, submitted in November 2005, requested a nine percent increase for the Assistant Prosecutors for 2006. That budget request was apparently submitted to the Board prior to the negotiations between the County Administrator and the Assistant Prosecutors' collective negotiations unit with respect to salary levels for 2006. It also was submitted prior to the Prosecutor's effort to "reopen" the negotiations with respect to all the agreements executed in January 2005. In pursuing this application, the Prosecutor has requested increases in excess of the amount agreed upon with the County Administrator, and in excess of the amount requested in the Prosecutor's prior budget request. The request advanced during the hearing included the five percent increase that had been agreed upon by the Assistant Prosecutors and the County Administrator for 2006, and an additional increase in a fixed amount for each assistant prosecutor, which was intended to adjust for what the Prosecutor perceived as disparities in the individual assistant prosecutors' salary levels within his office. Taken together, those two proposed increases would be in excess of the nine percent increase requested in the Prosecutor's budget proposal.
The Attorney General had authorized the filing of a Bigley application in December 2005. The letter issued by the Attorney General, however, specifically indicated that the application could not be filed until the budget process was complete, so that the Board would "have an opportunity to address correct (sic) the staffing and funding deficiencies" of the office. This court assumes that direction was based on the Attorney General's interpretation of existing case law, which will be discussed in more detail below. In any event, the Prosecutor did not proceed with this action until the Board had finally approved its budget for 2006. That occurred sometime in March 2006. The petition now before *373 the court was filed March 16, 2006. The Assignment Judge was unable to handle the matter as a result of a conflict, and the petition was assigned to this court, as the Acting Assignment Judge.
The petition as originally filed requested authorization for a variety of types of expenses. Requests were presented for additional staff, additional facilities, and funds for a community outreach program, as well as for increases in salaries and wage levels. In general, the requests outlined in the petition exceeded the requests incorporated in the Prosecutor's prior budget request. By way of example, the Prosecutor requested two additional assistant prosecutors' positions in his budget request, but requested four additional assistant prosecutors' positions in the pending petition. With the exception of the request related to salary of the First Assistant Prosecutor, the wage and salary requests presented through the petition were all in excess of the amounts requested in the prior budget submission.
The Prosecutor and the Board were able to reach agreement as to the requests for staff, facilities, and the community outreach program. Some additional staff have been authorized for 2006. Professionals are to be retained to review requests for additional staff and the need for additional facilities, and those issues will apparently be revisited in conjunction with the budget process for 2007. As an aside, the Board has questioned whether this court has the authority to deal with a request for additional facilities under the statute in question. That issue has not been resolved and may or may not be presented in some future proceeding. In that context, a hearing was conducted in May 2006, focusing on the dispute as to salaries and wages, which is the subject of this opinion.

THE LAW
As noted above, these proceedings are unique. Neither the statute at issue nor the existing case law provides a great deal of guidance in terms of procedure or the substantive standards to be applied by the court. A brief review of the applicable law is appropriate.
The court's authority to deal with this request is statutory. N.J.S.A. 2A:158-7 provides as follows:
All necessary expenses incurred by the prosecutor for each county in the detection, arrest, indictment and conviction of offenders against the laws shall, upon being certified to by the prosecutor and approved, under his hand, by a judge of the superior court, be paid by the county treasurer whenever the same shall be approved by the board of chosen freeholders of such county. The amounts to be expended shall not exceed the amount fixed by the board of chosen freeholders in its regular or emergency appropriation, unless such expenditure is specifically authorized by order of the assignment judge of the superior court for such county.
In re Bigley, supra, 55 N.J. 53, 259 A.2d 213 is the leading opinion dealing with that statute. In that opinion the Supreme Court confirmed what is apparent in the language of the statutethat the final decision with respect to a request for additional funds rests with the assignment judge and not with the board of chosen freeholders, subject to appellate review. Id., at 59, 259 A.2d 213. One portion of that opinion recognized the unique role assigned to the court under the statute in question, as follows.
It should be stressed that the statute does not call upon the judicial officer to sit in review of the action or inaction of the board of freeholders. On the contrary, *374 the judicial officer is required to make his own original evaluation of the prosecutor's request. Thus the judge does not exercise the judicial power of his office; the statute constitutes him a legislative agent. Hence, although we agree with Irving v. Applegate that the judge's order has the quality of a final judgment binding on the board of freeholders, we emphasize that the judge exercises a delegated legislative function and that in doing so he must decide what ought to be rather than whether the action or inaction of the board of freeholders was arbitrary or unreasonable.
[Id. at 57, 259 A.2d 213.]
In a separate passage, the Supreme Court provided some limited guidance as to procedure.
We should add some views with respect to procedural aspects. As we said earlier, the Assignment Judge acts as a legislative agent rather than as a judicial officer. Hence he does not sit in review of the action or inaction of the freeholders but rather makes his own original determination. Nonetheless the freeholders do speak for the taxpayers who must meet the added charge, and it therefore is appropriate, notwithstanding the absence of a legislative mandate, that the prosecutor make an initial request of the freeholders unless circumstances excuse that course. For like reasons, it is appropriate that the prosecutor give notice to the freeholders of his application before the Assignment Judge so that the freeholders may communicate their views.
[Id. at 61, 259 A.2d 213.]
The Supreme Court noted those same concerns in its subsequent opinion in In re Schragger, 58 N.J. 274, 277, 277 A.2d 212 (1971), again noting it was generally appropriate for the prosecutor to present his case to the freeholders for their initial decision. In In re Ruvoldt, 187 N.J.Super. 81, 453 A.2d 896 (App.Div.1982), the Appellate Division recognized those concerns again. In that case, as here, the prosecutor had requested additional equipment and personnel, as well as an increase in the salaries of certain employees. There, as here, the prosecutor based his concern with salaries on a comparison between the salaries paid in that office and the salaries payable in other prosecutors' offices around the state. Dealing with a separate issue, the Appellate Division concluded it had been inappropriate for the assignment judge to base his decision, in part, on certain CAP law limitations that were in effect at the time. Also at issue was the impact of two separate statutes, which then provided that the salaries of assistant prosecutors and detectives and investigators were to be fixed by resolution of the board of chosen freeholders on recommendation of the county prosecutor. The Appellate Division concluded that those statutes were applicable even where the prosecutor's proposed action with respect to salaries would be within his prior appropriations, subject to the prosecutor's right to request relief from the court pursuant to N.J.S.A. 2A:158-7. The court indicated that it was appropriate to require the prosecutor to have his budget approved by the board of freeholders, anticipating that relief would still be available under that statute. In re Ruvoldt, supra, 187 N.J.Super. at 92-93, 453 A.2d 896. In that same opinion, the Appellate Division also indicated that the assignment judge only had the power to bind the county to an increase in appropriations under N.J.S.A. 2A:158-7 "for one particular year's budget." Id. at 93, 453 A.2d 896. As noted above, in authorizing the filing of this application, the Attorney General specifically advised the Prosecutor *375 that the pending petition could not be filed until the budget process was complete. This court assumes that instruction was based upon the case law noted above.
Bigley applications can deal with a variety of expenses, many of which would appear to involve practical commitments well beyond the year in which the request is presented. Requests have been presented for increases in staff as in Bigley and Schragger. In some cases, there have been requests for the purchase of equipment, including motor vehicles. See In re Bigley, supra, 55 N.J. 53, 259 A.2d 213 and In re Ruvoldt, 187 N.J.Super. 81, 453 A.2d 896 (App.Div.1982). Both Bigley and Schragger dealt with requests for increases in salaries and wages for existing personnel.
This case is unique in that it involves a request to increase salaries that were previously established through the collective negotiations process, where formal agreements were executed by the collective negotiations units in question, the Board, and the Prosecutor.
Case law provides some guidance as to the relationship between the collective negotiations process, the budget process, and the filing of Bigley applications. The first reported opinion touching on those issues is In re Schragger, supra, 58 N.J. 274, 277 A.2d 212, decided by the Supreme Court in 1971. That case did not involve an existing collective negotiations agreement. In Schragger, a group of detectives and investigators were engaged in collective negotiations with the Board of Freeholders when a Bigley application was presented to the Assignment Judge, asking that he authorize the appointment of additional personnel and set salary and wage levels. He did that, and the Board appealed. The Supreme Court affirmed the Assignment Judge's decision. In doing that, it commented on the collective negotiations that were ongoing at the time of the original application, specifically indicating that the prosecutor was not a proper party to the negotiations with the detectives and investigators under the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -30. The Supreme Court commented on the assignment judge's function in the following passage.
The prosecutor is not a party to the negotiations under that statute. Nor did the Assignment Judge attempt to decide what the parties to those negotiations should do. Rather the Assignment Judge was concerned only with fixing salaries which he found to be necessary to enable the prosecutor to man his office under prevailing conditions. The New Jersey Employer-Employee Relations Act did not transfer the Assignment Judge's role to the Board and the negotiating employee unit. The Assignment Judge correctly held his responsibility remained undiminished. His action, of course, does not bind the parties to the negotiating procedure except that those parties may not negotiate away the prosecutor's capacity to perform the duties of his office as assured by the order of the Assignment Judge.
[Id. at 280, 277 A.2d 212.]
As noted, the Supreme Court indicated that the prosecutor was not a proper party to collective negotiations with his own staff. That conclusion was not discussed in any detail. It may have been based on the Supreme Court's interpretation of the section of the New Jersey Employer-Employee Relations Act that defines the term "employer." That definition indicates that the term includes "public employers," referring more specifically to the State, counties, municipalities, other political subdivisions of the State, school districts, authorities, commissions, boards, and any branch or agency of the public service. *376 See N.J.S.A. 34:13A-3. Arguably county prosecutors do not fit within the various entities noted. In any event, the Supreme Court's comment limiting the prosecutor's role in collective negotiations is at odds with subsequent case law. It may be appropriate to treat that prior passage as dictum.
The proper roles of both the Prosecutor and the Board in the collective negotiations process are at issue here, particularly with respect to the negotiations that occurred in 2005. Those issues will be discussed in some detail below. The prosecutor's role in collective negotiations was addressed again in a number of trial court and appellate court decisions approximately ten years after the decision in Schragger. That first occurred in two separate Appellate Division opinions decided in 1980. See Bergen County Chosen Freeholders Board v. Bergen County Prosecutor, 172 N.J.Super. 363, 412 A.2d 130 (App.Div.1980) (involving a petition filed by the Superior Officers of the County Detectives Association of Bergen County); In re Mercer Chosen Freeholders Board v. Mercer County Prosecutor, 172 N.J.Super. 411, 412 A.2d 809 (App. Div.1980) (involving a union representing clerical, stenographic and technical employees of the Mercer County Prosecutor). In each case the Appellate Division affirmed a decision made by the Public Employment Relations Commission determining that the prosecutor, and not the board of freeholders, was the public employer for purposes of collective negotiations with the prosecutor's staff under the New Jersey Employer-Employee Relations Act. Neither opinion commented on the Supreme Court's opinion in Schragger.
Within a short time the issue was addressed again in two separate opinions dealing with a dispute between the Burlington County Prosecutor and the Burlington County Board of Chosen Freeholders, each decided in 1981. See Sullivan v. Burlington County Chosen Freeholders Board, 179 N.J.Super. 228, 431 A.2d 176 (App.Div.1981) (hereinafter referred to as Sullivan I); and In re Sullivan, 184 N.J.Super. 463, 446 A.2d 558 (Law Div. 1981) (hereinafter referred to as Sullivan II). The prosecutor involved had negotiated and entered into collective negotiations agreements with three separate collective negotiations units, representing clerical personnel, detectives and investigators, and lieutenants and captains respectively. Notably, each of those agreements was for a term of three years. Each was executed in October 1980, and provided for salaries for a period of three years retroactive to January 1980. The freeholders were aware of the negotiations but apparently did not participate. The freeholders did not agree to the terms that had been negotiated. Recognizing that his budget was not sufficient to fund the agreements, the prosecutor asked the freeholder board to fund the payments that would be necessary. When it refused, the prosecutor filed an action in lieu of prerogative writs, asking that the court compel the board to fund the agreements in question. That action was handled by Assignment Judge Samuel D. Lenox, Jr., who ultimately dismissed the complaint based on his determination that the prosecutor was not in a position to make a binding agreement absent the necessary funding, and that additional funding must be requested pursuant to N.J.S.A. 2A:158-7, and not through an action in lieu of prerogative writs. The Appellate Division affirmed, with the understanding that a separate application would have to be filed pursuant to that statute. By the time that application was filed, Judge Haines had become the Assignment Judge. Sullivan II is his opinion dealing with that application. Judge *377 Haines concluded that the prosecutor had not carried his burden of proof with respect to the proposed salary increases for clerical personnel and directed that the proposed salaries for clerical personnel would have to be revised to equal those of similar personnel employed by the county. At the same time, Judge Haines approved the proposed increases for non-clerical personnel. One portion of his opinion specifically approves the salary arrangements in one of the October 1980 agreements. While the opinion is not specific on this point, it appears that Judge Haines's approval, based on the provisions of N.J.S.A. 2A:158-7, was effective for a period of three years. Again, neither opinion addressed the Supreme Court's comments in Schragger, suggesting the prosecutor was not a proper party to collective negotiations with his own employees.
The case law provides guidance as to just how county prosecutors and boards of freeholders should approach the collective negotiations process as to salary and wage levels. The prosecutor should be considered the employer, for the purpose of collective negotiations under the New Jersey Employer-Employee Relations Act, as recognized in the Appellate Division opinions in Bergen County Freeholders Board, Mercer County Freeholders Board, and Sullivan I. The prosecutor, as the employer, has both the right and the obligation to engage in collective negotiations with collective negotiations units representing his staff. See N.J.S.A. 34:13A-5.4(a)(5) (prohibiting employers from refusing to negotiate in good faith). Given the provisions of N.J.S.A. 2A:158-7, it may be appropriate for the prosecutor to ask the county to participate in those negotiations in any number of ways. In any event, if the county is unwilling to agree to salary or wage levels agreed to by the prosecutor and the collective negotiations unit, the prosecutor may then request approval of the negotiated increases by the court, pursuant to N.J.S.A. 2A:158-7. This court sees no reason why such an application could not extend to multiyear agreements as was apparently the case in the Sullivan opinions. Such applications need not be tied to the budget process for any particular year. By the same token, it is appropriate to recognize that salary increases arising out of the collective negotiations process may impact on other budget considerations that may only be addressed during the budget process. See Sullivan I, supra, 179 N.J.Super. at 233, 431 A.2d 176 (noting that the assignment judge would have the option of responding to increases in salaries by requiring reduced expenditures in other areas).
This case does not involve that type of application. In this case, the Prosecutor deferred to the County Administrator who in turn conducted the negotiations leading to the execution of collective negotiations agreements in January 2005. Both the Board and the Prosecutor agreed to the terms negotiated by the County Administrator. Obviously, this case involves an entirely different set of circumstances, which impact on the pending application, discussed in more detail below.
What standard governs the court's action on the Prosecutor's request? That simply is not clear. Is the Prosecutor's presentation to be analyzed based on some formal burden of proof? As already noted, the court sits as a legislative agent. Clearly the prosecutor is required to provide some notice to the board of freeholders, as indicated in the cases cited above. Formal hearings may or may not be necessary, depending on the nature of the request at issue. In this case, the court determined there was no right to discovery, and that the rules of evidence would not apply to the hearing that was conducted. *378 Clearly the Prosecutor is required to convince the court, in the most general sense, that his request for additional funds is appropriate. It is not clear that any more specific standard applies. The Board, in opposing the Prosecutor's request, argues that the Prosecutor is required to establish, presumably by a preponderance of the evidence, that the additional expenditures at issue are "necessary expenses," based on the language of N.J.S.A. 2A:158-7. The Board also has suggested that the Prosecutor must establish that the failure to provide additional funding will have some specific impact on the number of individuals investigated, charged, or convicted as a result of the efforts of his staff.
The reported cases deal with those issues in a limited fashion. In Bigley, the Supreme Court indicated the court considering a Bigley application acts as a legislative agent, and is obligated to "decide what ought to be done." In Schragger, the Supreme Court dealt with a constitutional challenge to N.J.S.A. 2A:158-7. In that opinion, the Supreme Court recognized that the standard to be applied in these proceedings is less than clear, in the following passage:
With respect to the Board's further point, that N.J.S.A. 2A:158-7 fails to set forth a standard for the exercise of the delegated power, it is enough to say that the statute is as precise and revealing as the subject reasonably permits.
[In re Schragger, supra, 58 N.J. at 279, 277 A.2d 212.]
The Appellate Division decision in In re Ruvoldt also addressed the issue, but in a somewhat different context. That case involved requests for additional equipment and personnel. The opinion focused on the CAP law limitations applicable to the county at the time, and the court ultimately determined that it was inappropriate for the trial court to have considered those limitations in resolving that Bigley application. The trial court had distinguished between proposed expenditures it found to be "desirable" and those that were "necessary" in the sense of being "reasonably required." The trial court then rejected the prosecutor's request for additional funds on several bases, apparently referencing the CAP law, the court's conclusion that the prosecutor had been able "to meet the county's needs," and the state's responsibility for unification of the criminal justice system through communications equipment. The Appellate Division addressed the issue as follows:
The prosecutor maintains that the trial judge erred in his determination of appellant's application for funds in excess of those appropriated by the Board of Freeholders in that he considered the request in light of the limited resources of the county government, as aggravated by the CAP law limits on increased expenditures. (Citations omitted.) We agree the judge should have limited his inquiry to whether the increased appropriations were reasonably necessary. Since the inability of the county to appropriate the extra money while staying within its CAP limitations was a major basis of the decision, we find the error was prejudicial.
[In re Ruvoldt, supra, 187 N.J.Super. at 87-88, 453 A.2d 896 (emphasis added).]
The passage just noted could be interpreted as indicating the Appellate Division had accepted the distinction suggested by the trial court between expenditures that are "desirable" and expenditures that are "reasonably required," indicating the prosecutor pursuing a Bigley application is required to make some specific showing that the expenses in question are somehow "required" or "essential" to permit him to perform the basic functions of his office. In this case, the Board has noted appropriately *379 that the Prosecutor has not been able to show that the proposed increases in salaries are, in that sense, essential. As will be discussed below, the information provided during the hearing indicates that the workload being handled by the Prosecutor's staff is substantially above the average or median workloads in other prosecutor's offices around the state in virtually all categories. By the same token, the testimony offered indicates that the Prosecutor's staff is functioning efficiently and effectively, and has dealt adequately with that workload. Indeed, the Prosecutor has based his request for an increase in salaries and wages on his recognition of his staff's efforts, and the fact that current salaries and wages are also below the state averages.
This court is not convinced that the existing case law should be read as restrictively as suggested by the Board. The Appellate Division in In re Ruvoldt dealt primarily with the CAP law limitations and the passage just quoted appears to focus on that issue. The opinion in Bigley suggests a more general inquiry, both through its reference to the court as a legislative agent and to the need to determine "what ought to be done." In addition, our case law recognizes the substantial responsibilities and authority entrusted to the prosecutor. The following discussion appears in a separate Law Division opinion involving Prosecutor Ruvoldt, issued in 1985.
The Prosecutor is a constitutional officer possessing great authority and responsibility. The Prosecutor is commonly considered the chief law enforcement officer within the county. See State v. Winne, 12 N.J. 152, 167, 96 A.2d 63 (1953). The Prosecutor has been said to be the foremost representative in the county of the executive branch of government in the enforcement of the criminal law. Winne, supra at 171, 96 A.2d 63. See also, In re Parole Application of Hawley, 98 N.J. 108, 484 A.2d 684 (1984) and In re Trantino Parole Application, 89 N.J. 347, 446 A.2d 104 (1982).
Together with the Attorney General the Prosecutor has broad powers of law enforcement. See N.J.S.A. 2A:158-4, 5 and N.J.S.A. 52:17B-102 et seq. By statute the Prosecutor is vested with and shall use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the law. N.J.S.A. 2A:158-5.
In State v. Winne, Chief Justice Vanderbilt referred to the authority of the Prosecutor in the following sweeping language:
[N]or has the legislature merely imposed duties of vast importance to the public on the county prosecutor. . . . It has given him power not paralleled elsewhere in the county to incur expenses in "the detection, arrest, indictment and conviction of offenders' against the law" . . . . It is a matter of common knowledge that the local law enforcement authorities from the chanceman on his beat to the chief of police and beyond him to the director of public safety are responsive to the county prosecutor's concept of law enforcement on pain of possible indictment if they do not cooperate with him in enforcing the law. He does not stand alone. He is in a position to command the cooperation of all the law enforcing authorities in the county. He is amply equipped for the performance of his indispensable task, if law and order are to be maintained in the county and all our rights both of person and of property are to be adequately safeguarded. [Winne, supra, at 167-169, 96 A.2d 63].

See also Reiman v. Breslin, 175 N.J.Super. 353, 362, 418 A.2d 1293 (App.Div. *380 1980); Rolleri v. Lordi, 146 N.J.Super. 297, 305, 369 A.2d 952 (App.Div.1977). The County on the other hand is a creature of the State whose authority has definite limits.
Without in any way denigrating county government's significant place in our governmental scheme, it would be incongruous to permit county government to control the operations and functions of the Prosecutor, a constitutional officer entrusted with awesome duties of "vast importance to the public". County government has a rightful role to play in the formulation and approval of the Prosecutor's budget and the fixing of salaries within the Prosecutor's office; all as set forth by statute, and all, of course, subject to the authority of the Assignment Judge under the Bigley statute.
[Ruvoldt v. Clark, 204 N.J.Super. 438, 442-444, 499 A.2d 247 (Law Div.1983).]
That same perspective is apparent in the Appellate Division opinion in In re Mercer Freeholders Board, supra, 172 N.J.Super. 411, 412 A.2d 809. That case involved a union's request for certification of its right to represent certain employees of the Mercer County Prosecutor. The Appellate Division affirmed the Public Employment Relations Commission's decision that the prosecutor, and not the county, was the public employer for purposes of collective negotiations under the New Jersey Employer-Employee Relations Act. It was in that opinion that the Appellate Division indicated that the Legislature's intent, in enacting N.J.S.A. 2A:158-7, was to provide the prosecutor with "a dominant status" with respect to the appointment of personnel and the establishment of salaries. Id. at 414, 412 A.2d 809.

THE PROSECUTOR'S REQUEST
The application now before the court presents issues of both substance and procedure. One initial issue is whether the Prosecutor's request for an increase in salary levels is substantively appropriate. Is the Prosecutor's staff, in the most general sense, "underpaid"? Are the increases requested reasonable and appropriate? Separate issues are presented, however, as to the manner in which the Prosecutor and the Board interact with respect to both collective negotiations and the budget process. Should the Prosecutor be able to obtain increases in salaries over those he agreed to in executing the collective negotiations agreements negotiated and approved in late 2004 and early 2005? Should the Prosecutor be permitted to request increases in salaries beyond those presented to the Board with his 2006 budget request? Each issue will be discussed in turn.
In the most general sense, this court is satisfied that the Prosecutor's concerns with respect to the level of salaries now payable to his staff are appropriate. Those concerns are based largely on the statistical analysis presented during the hearing conducted by the court, and extend to virtually every employee group within the Prosecutor's office. In essence, the Prosecutor has concluded that his staff is "overworked and underpaid," particularly in comparison to the offices of other prosecutor's offices around the state. The statistics offered are subject to attack on a number of grounds, as noted by the Board. In the end, this court was satisfied that the statistics supported the Prosecutor's position.
The Prosecutor placed a substantial amount of reliance on a Staff Analysis prepared by the Research and Evaluation Section of the Division of Criminal Justice, in anticipation of a potential Bigley application. That analysis was based on a comparison of staffing levels in the Cape *381 May Prosecutor's office with staffing levels in two other counties selected based on the volume of activity in each. Workload and production were measured by a variety of indices, using data from 2004. The analysis prepared extended to virtually all employee groups, including assistant prosecutors, investigative staff, and secretarial staff. In general, the analysis indicated the workload in Cape May County was substantially above the average for the two other counties during the time period in question. From the court's perspective, that Staff Analysis was not convincing. The use of only two counties for purposes of the comparison was a matter of substantial concern. The analysis presented begs the question of whether the staffing levels in either or both of the comparison counties were appropriate, and that issue was not addressed in the presentation to the court.
Other statistics were available, however, on a statewide basis, dealing both with workload and with salary levels. Those statistics were convincing. As of 2004, based on a number of measures, the workloads for assistant prosecutors in Cape May County were the second highest of the twenty-one counties in the state, behind only one county that has since increased its staff as a result of a Bigley application. Similarly, as of that same time, the workloads for detectives and investigators in Cape May County were the second highest in the state, again behind only the one county that has since increased its staff. More impressive than the relative rankings, however, were the specific figures presented. By way of example, there was an analysis of the number of index crimes per detective offered for each county in the state. As of 2004, there were thirty-nine index crimes per detective in Cape May County. In eleven of the remaining twenty counties, there were twenty or fewer index crimes per detective. In a number of those counties there were only nine or ten index crimes per detective during the year in question. Similarly, in 2004, there were 493 total crimes per assistant prosecutor in Cape May County. In thirteen of the remaining counties, there were 300 or fewer total crimes per assistant prosecutor. Based on that measure, the workload for assistant prosecutors in Cape May County was twice that in at least five other counties during that year.
The statistics provided with respect to relative salary levels also were convincing. The 2005 Staffing Resource Analysis for the Offices of the County Prosecutors and the Division of Criminal Justice, prepared by the Research and Evaluation Section of the Division of Criminal Justice, compared salary levels in the twenty-one county prosecutors' offices and in the Division of Criminal Justice, as of August 2005. The mean and median salaries for assistant prosecutors in Cape May County were ranked twentieth in that survey, being the third lowest in the state as of that time. The mean and median salaries for detectives and investigators in Cape May County were ranked eighteenth and sixteenth, respectively. The mean and median salaries for secretarial and clerical personnel were ranked seventeenth and twenty-second, respectively. Specific salary figures were provided for each county prosecutor's office. In absolute terms, it appears that the staff in Cape May County is underpaid.
All those statistics were subject to attack. The statistics as to workload were based on data from 2004. There may be differences in the types of cases being addressed from one county to the other, impacting on any analysis of workload. In Cape May County there have been increases in staff since 2004, and the Prosecutor and the Board have now agreed to *382 additional increases in staff for 2006, which will undoubtedly affect workload. Differences in salary levels may reflect differences in the qualifications or years of experience of staff, or differences in the labor market in various parts of the state. The suggestion that salary levels in a particular county prosecutor's office should be based on the average salary levels around the state also has some logical limitations. In the absence of some system that would establish uniform salaries around the state, some prosecutors' offices will always find themselves in the lower range of salaries.
Anecdotal information also was provided as to the Prosecutor's concern with salary levels and workload. As already noted, it appears the Prosecutor's staff has been working efficiently and effectively over the years. Staffing has been relatively stable. On the other hand, testimony was offered indicating there have been substantial additional demands placed on staff over the last few years, particularly since September 2001. Some staff apparently have expressed frustration over perceived disparities in salaries, in comparison to salaries paid in other parts of the state. The Prosecutor has expressed legitimate concern about the ability to attract both attorneys and investigative staff in the future, given current salary levels. He also has expressed the simple desire to see that his staff is appropriately compensated.
The Prosecutor has not established that an increase in salary levels is somehow "essential," or that his office will not be able to fulfill some specific function entrusted to it without an increase in salaries. From this court's perspective, however, the law does not require that. Judge Haines, in his opinion in Sullivan II, recognized the broader concerns expressed by the Prosecutor here, in the following passage:
The obligation of the prosecutor is to stress constant improvement in the quality and capacity of his personnel. When those personnel are performing jobs which require sensitivity, exposure to danger and extensive training, improvement can be expected only when compensation is adequate. The level of compensation must be raised to meet competition. This can be done gradually, but only if employees know that it is planned; otherwise, morale suffers, employees are lost and poor performance follows.
[In re Sullivan, supra, 184 N.J.Super. at 472-473, 446 A.2d 558.]
Considering all the information provided, this court is satisfied that the Prosecutor's request to increase salaries and wages to something close to the average of other prosecutor's offices around the state is substantively reasonable. Putting aside the issues presented with respect to the existing collective negotiations agreements and the budget process, the proofs presented by the Prosecutor are "as precise and revealing as the subject reasonably permits." See In re Schragger, supra, 58 N.J. at 279, 277 A.2d 212. But for those additional issues, it is probable this court would authorize the additional expenditures requested for salaries and wages.
Those other issues, however, are substantial.

COLLECTIVE NEGOTIATIONS, BUDGETING, AND THE BIGLEY PROCESS
The Prosecutor has asked the court to authorize salary increases beyond the amounts agreed upon through the collective negotiations process. Four of the five collective negotiations agreements executed in January 2005 established salary and wage levels, with annual raises through the end of 2008. Those agreements were negotiated *383 by the negotiations units and the County Administrator. They were accepted by the employees, the Board, and the Prosecutor. The Prosecutor has now asked that the court authorize increases beyond the amounts he had agreed upon for 2006. In addition, a number of the increases requested through the pending petition are in excess of the amounts requested by the Prosecutor during the budget process. For a number of reasons, this court is satisfied those requests should be rejected. From the court's perspective, it simply would not be fair to permit the Prosecutor to now disclaim the positions he had taken earlier. To permit such disclaimers also would impact negatively on both the collective negotiations process and the budget process. The issues presented require some discussion and extend beyond the issues raised by the pending petition.
The Legislature has recognized the propriety of collective negotiations in the public sector. The New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -30, has been in effect for an extended period of time. That statute permits public employees to form and join employee organizations, which in turn are able to engage in collective negotiations. N.J.S.A. 34:13A-5.3. Public employers are prohibited from refusing to negotiate with representatives of employee groups, and from refusing to reduce a negotiated agreement to writing. N.J.S.A. 34:13A-5.4. The statute permits the parties to agree to arbitration, at least as to some issues. N.J.S.A. 34:13A-5.3. One section of the statute, applicable to law enforcement personnel, including detectives and investigators employed by county prosecutors, provides for public interest arbitration that may resolve a variety of disputes with finality, when the public employer and the negotiating unit have been unable to resolve the issues through collective negotiations. See N.J.S.A. 34:13A-14(a), (the Police and Fire Public Interest Arbitration Reform Act). Collective negotiations in the public sector can extend to a variety of issues, including salaries and wages. There is no apparent limit on the term of collective negotiations agreements that can be negotiated in the public sector.
Collective negotiations is a fundamental concern for all state, county, and local governments. The process impacts on the public employer's relationship with its employees, on the manner in which government can function, and on budgetary concerns. Collective negotiations agreements can provide a form of stability and predictability to the relationships in question, presumably for the benefit of both the public employer and the employee groups. That is particularly true when the parties are able to reach agreements that extend over several years. The negotiations process presumably involves a substantial investment of time, resources, and energy, and can involve a host of sensitive and interrelated interests, particularly when an employer is required to deal with a number of collective negotiations units. Just by way of example, the testimony offered here indicated that the Board through the County Administrator recently have been involved in negotiations with a collective negotiations unit involving approximately one thousand county employees. The County was appropriately sensitive to the relationship between those negotiations and negotiations with other employees, including the Prosecutor's staff. Like any other contract, collective negotiations agreements are entitled to substantial respect.
As with many areas of the law, the rules requiring one to abide by one's contracts are not absolute. In appropriate circumstances, contracts may be subject to rescission or reformation or may even *384 be voidable. In this case, however, the court sees no basis for excusing the Prosecutor from recognizing the commitments he made when he consented to the collective negotiations agreements in question.
The Prosecutor suggests it was inappropriate for the County Administrator to take the lead in the negotiations that resulted in the collective negotiations agreements approved in January 2005. He relies, in part, on the case law that treats the county prosecutor, as opposed to the board of freeholders, as the "employer" for purposes of collective negotiations. See Bergen County Freeholders Board, supra, 172 N.J.Super. 363, 412 A.2d 130; In re Mercer Freeholders Board, supra, 172 N.J.Super. 411, 412 A.2d 809. It is in that context that the Prosecutor argues he had the right, if not the obligation, to "reopen" the prior negotiations, to propose an increase in salary levels, and to then request approval of those increases by the court. It is appropriate to treat the Prosecutor as the "employer" of all of his staff for analytical purposes, and to permit him to conduct negotiations with the collective negotiations units representing his staff if he concludes that is appropriate. On a practical level, however, it is clear that both the Board and the Prosecutor have a direct interest in any negotiations with the Prosecutor's staff, at least with respect to salaries and wages. In many situations, one might expect the county prosecutor and the board of freeholders would want to coordinate their efforts with respect to collective negotiations. Each might benefit from the ability to deal with the collective negotiations units in a unified fashion.
Given the provisions of N.J.S.A. 2A:158-7, neither the Prosecutor nor the Board is in a position to commit the other to specific salary levels without the consent of the other or the authorization of the court. Conceivably, both the Prosecutor and the Board might want to participate actively in any collective negotiations process that would impact on salaries. By the same token, it would be reasonable for the Prosecutor and the Board to agree that one or the other of them would be responsible for dealing with the collective negotiations unit in question, subject to the obligation to consult with the other before any final agreement could be reached. In simple terms, the procedure employed here, where the County Administrator took the lead in the negotiations, is not necessarily objectionable as long as that occurs with the consent of the Prosecutor. The opinions in Bergen County Freeholders Board and In re Mercer Freeholders Board do not appear to bar such a consensual arrangement. The Prosecutor may not have appreciated the authority and responsibility entrusted to him with respect to these matters, as of the time of those negotiations. He did, however, agree to the terms that had been negotiated.
There were three parties to each of the collective negotiations agreements, as reflected by the terms of the agreements themselves. In each case the agreement refers to the County, the Prosecutor, and the collective negotiations unit as parties. Signatures were required and were provided by each of those parties. It is clearly appropriate to interpret each agreement as resolving any potential dispute between the Board and the Prosecutor as to salary levels during the term of the agreement, which might otherwise have been the subject of an application to the court pursuant to N.J.S.A. 2A:158-7. However genuine the Prosecutor's current concerns may be, the court sees no basis for relieving him of his prior commitments. For those reasons, the Prosecutor's request for authorization of increases of those salaries established by the collective negotiations agreements executed in *385 January 2005 is denied. The court declines to authorize the increases requested for the Detectives, Investigators, and Sergeants, the Captain and Lieutenants, the Prosecutor's Employee Organization, the prosecutor's secretary, and the office manager.
The collective negotiations agreements here extend well beyond the current budget year. Indeed, they extend through most of the Prosecutor's current term. They will bind all of the parties for some time. For the reasons noted above, that appears appropriate. Presumably this Prosecutor will want to be actively involved in the collective negotiations process when the current agreements expire. One suspects the Board also will want to be involved in one way or another. All involved will have some incentive to reach agreements that will extend for some time into the future, beyond one budget year. A variety of problems may be presented if the Prosecutor and the Board are unable to agree to an appropriate adjustment to salaries and wages, on terms also acceptable to the collective negotiations unit in question. Should the Prosecutor be barred from presenting a Bigley application until the budget process has been completed as suggested in the Attorney General's direction to the Prosecutor in this matter? Should the application be limited to salary and wages levels for the current budget year as indicated in the Appellate Division's opinion in Ruvoldt? It would be extraordinary if the collective negotiations process was structured to coincide with the budget process. Presumably the County would prefer to have any collective bargaining issues resolved before it addresses its budget for the coming fiscal year. In addition, there are substantial benefits to addressing collective negotiations issues on a multi-year basis. In future years, this court would not foreclose the presentation of a Bigley application related to the collective negotiations process, dealing with a period in excess of one year, independent of the budget process. It also may be appropriate to permit a Bigley application, independent of the budget process to deal with the salaries of the Assistant Prosecutors, which will be subject to negotiation on an annual basis, at least through 2008.
Additional issues are presented with respect to the relationship between the budget process and the procedure to be followed in pursuing a Bigley application, particularly as to employees whose 2006 salaries were not established in the prior collective negotiations agreements. Separate concerns have been raised as to the requests presented with respect to two groups of employees, given the amounts requested during the budget process. One group is the Assistant Prosecutors. Their collective negotiations agreement does extend through 2008, but provides that salaries are subject to negotiation in October of each year, for the following calendar year. Negotiations were conducted in late 2005 or early 2006. The Assistant Prosecutors and the County Administrator agreed to an increase of five percent for 2006. The Prosecutor, however, did not agree to that increase and had previously referred to the Assistant Prosecutors' initial demand for a nine percent increase in his 2006 budget request. The second group is comprised of eight employees who are not subject to a collective negotiations agreement at all. Two of the eight serve in management positions and are excluded from the collective negotiations process for that reason. Those two, the First Assistant Prosecutor and the Chief of Detectives, are in unique positions. The additional six employees include five agents and one chemist who have not participated in any collective negotiations unit and whose employment is not governed by any *386 written contract. In submitting his 2006 budget, the Prosecutor requested an increase of six percent plus an additional $3000 for the chemist, and an increase of six percent for each agent. He also requested six percent increases for the First Assistant Prosecutor and the Chief of Detectives. In the case of the First Assistant, however, that request assumed there would have been an additional increase of three percent dating back to the 2005 budget year.
With the exception of the request as to the salary of the First Assistant Prosecutor, the pending Bigley request, as to all these additional employees, exceeds the amounts requested during the 2006 budget process. As to the Assistant Prosecutors, the Prosecutor requested both a percentage increase and additional increase in a fixed amount to be paid to each Assistant Prosecutor, in an attempt to deal with a perceived disparity in salaries within that group of employees. The request presented with respect to the agents and chemist was computed based on the average, on a percentage basis, of the proposed increases for those employees covered by collective negotiations agreements. As already indicated, the court has not authorized those other increases.
By law, the Board is required to adopt a budget each fiscal year, on a calendar year basis. See N.J.S.A. 40A:4-3; N.J.S.A. 40A:1-1. The Attorney General has apparently interpreted existing case law as requiring a prosecutor's request for additional funding be presented during the budget process and that Bigley petitions not be filed until that process has been completed. In the most general sense, and putting aside the collective negotiations process, there are good reasons to proceed in that fashion. Such a procedure permits the board of freeholders to consider the prosecutor's requests at the same time it is considering the rest of its budget. That presumably provides some benefits both procedurally and substantively, with respect to many budget items. That would be true with respect to requests for increases in personnel, requests for the purchase of equipment, and the funding of most recurring expenses. That procedure can be problematic, however, in dealing with salary and wage levels, which are often addressed outside the formal budget process. Collective negotiations involve what can be a complex and time consuming process, which will often proceed outside the budget process. In Cape May County, as a matter of practice, the salaries of employees who are not subject to collective negotiations agreements have been subject to review on an annual basis in the summer of each year, well after the County's budget has been adopted, on the assumption adjustments to salary levels can be made within the existing budget based on intervening changes in the actual work force. Indeed, in the course of this proceeding, the Board specifically suggested that the Prosecutor's request for increases in the salaries of at least some of the non-contract employees was premature, since that review process for 2006 had not yet been initiated.
All the circumstances suggest there is a need for some flexibility in dealing with requests for increases in salaries and wages based on the provisions of N.J.S.A. 2A:158-7. That is true with respect to the collective negotiations process, as already noted. That may or may not be true, however, with respect to non-contract employees such as the eight at issue here. Over the long term, the Board may want the ability to conduct its midyear reviews of those employees as it has in the past, before being faced with a Bigley application with respect to their salaries. The Prosecutor may or may not agree that is appropriate. To accommodate that type *387 of procedure, it might be necessary to permit a related Bigley application following such a review, independent of the budget process.
The issue presented here is more limited. Over the past six months, the Prosecutor's budget was reviewed and approved by the Board, with input from the Prosecutor as a part of the approval of the budget for the entire County. Within a short time after the budget was approved, the pending Bigley petition was filed. Both the Prosecutor and the Board proceeded on the understanding that the Board would be given an opportunity to review the Prosecutor's requests prior to the filing of any Bigley petition, and that the review would occur within the context of the budget process for 2006. Given all the circumstances, the court is satisfied it would be inappropriate to authorize additional expenditures beyond those presented in the Prosecutor's budget request for 2006. The increases requested through the budget process were all below those requested in the pending proceeding. As already noted, this court is satisfied that the increases that had been proposed in this proceeding were appropriate but for the court's concern with respect to the collective negotiations process and the budget process. There are two groups of employees whose salaries for 2006 have not been established through the collective negotiations processthe Assistant Prosecutors and the non-contract employees. This court is satisfied all of the salary increases presented through the Prosecutor's budget proposal both for those two groups of employees were appropriate. Those increases will be authorized. The increases authorized are for the 2006 calendar year, effective January 1, 2006, based on the salaries in effect at the end of 2005. The court declines to authorize any additional salary increases.
The salary of each Assistant Prosecutor will be increased by nine percent per annum, effective January 1, 2006, as proposed in the prior budget request. The court is aware that increase is above that accepted by the Assistant Prosecutors in their negotiations with the County Administrator for 2006, as contemplated by the collective negotiations agreement executed in early 2005. The Prosecutor did not participate actively in those negotiations and did not agree to the more limited increase that was apparently acceptable both to the Assistant Prosecutors and to the Board. Obviously this additional increase is not "essential" to the operation of the Prosecutor's office, as that term is commonly used. It seems clear that each of the assistant prosecutors in question would remain with the office and would continue to perform appropriately with or without this additional increase. As previously discussed, the court is satisfied that the Prosecutor's desire to increase salaries to an amount approximating the state average is appropriate. These increases will further that goal.
The request for an increase in the salaries of the one chemist and the five agents present a separate issue. As the Board has noted, the Prosecutor has not presented any statistical evidence that the salaries of those individuals are below the average for such positions around the state. Apparently the Division of Criminal Justice has not gathered that type of data. There is separate justification, however, for the budget request for increases for these employees. Those requests are generally consistent with the increases that will be in effect for 2006 for most of the employees of the Prosecutor's office based on the collective negotiations agreements executed in January 2005. The salaries of the one chemist and five agents will be increased as proposed in the budget request. The chemist will receive an increase of six *388 percent over his 2005 salary, and an additional $3000 increase specifically related to his position. Each of the agents will receive a 6% increase, based on the prior budget request. Again, that increase is effective January 1, 2006.
There are two other non-contract employees whose salaries are at issuethe First Assistant Prosecutor and the Chief of Detectives. Their positions are unique in several ways. Each acts in a management capacity and therefore does not participate in any collective negotiations unit. Each oversees a group of professionals, who are a part of separate collective negotiations units. Each has worked under a number of prosecutors, over a substantial period of time, and each appears to perform admirably. On two separate occasions in the past, the First Assistant has served as Acting Prosecutor for the County for fairly extended periods of time. The Prosecutor's request to increase their salaries is particularly compelling. For reasons already noted, however, those increases will be limited to the amounts requested through the prior budget submission. The Chief of Detective's salary will be increased by six percent. The First Assistant Prosecutor's salary will be increased nine percent, reflecting the six percent increase referred to in the 2006 budget request and an additional three percent increase that had been discussed for the prior calendar year. The court accepts the representation of the Prosecutor that the 2006 budget request for the First Assistant Prosecutor was based on the assumption he would be receiving a separate increase for 2005 that was never implemented. Again, all those increases are effective January 1, 2006. Obviously, the salaries of the Assistant Prosecutors and the non-contract employees will be subject to review annually.
An order will be entered reflecting those determinations.